1
2
3
4
5

MANATT, PHELPS & PHILLIPS, LLP
John M. Gatti (CA Bar No. 143515)
jgatti@manatt.com
Lauren J. Fried (CA Bar No. 261852)
lfried@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, CA  90067
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

6
7

*Attorneys for Defendant*
MIRAMAX, LLC

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11

FIROOZ ZAHEDI, an individual,

12

Plaintiff,

13

vs.

14

MIRAMAX, LLC, a Delaware Limited
Liability Company; et. al.,

15

16

Defendants.

Case No. 2:20-CV-04512-DMG-EX

**DEFENDANT MIRAMAX, LLC'S
NOTICE OF MOTION AND
MOTION TO BIFURCATE AND
PARTIAL STAY OF DISCOVERY**

Hearing Date:    March 26, 2021
Hearing Time:    9:30 a.m.
Hearing Location:

Courtroom 8C
350 West 1st Street,
Los Angeles, CA, 90012,

Case Filed:    May 19, 2020
FAC Filed:    July 21, 2020

17
18
19
20
21
22
23
24
25
26
27
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 26, 2021 at 9:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom 8C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA, 90012, Defendant Miramax, LLC ("Defendant" and/or "Miramax"), by and through its undersigned attorneys, will and hereby does move this Court for an Order (1) bifurcating this action and its corresponding discovery into a copyright ownership (*i.e.* liability) phase and damages phase, and (2) staying discovery on issues solely relating to damages until an adjudication is made regarding copyright ownership.

On or about October 17, 2003, Miramax received a Certificate of Registration from the U.S. Copyright Office registering Miramax as the copyright owner of a promotional photograph ("Initial Photograph"). The Initial Photograph was part of a set of photographs, commissioned by Miramax of the characters of the award winning film *Pulp Fiction* (collectively, the "Photographs").

Plaintiff Firooz Zahedi ("Zahedi") was engaged in a work for hire capacity by Miramax to take the Photographs, including the Initial Photograph. Pursuant to Zahedi's work for hire agreement, Miramax was deemed to be the author and owns in perpetuity all right, title, and interest, including without limitation, the worldwide copyright in any and all photographs Zahedi took during the photoshoot and any underlying negatives of such photographs.

From 1994 until August 2019, neither Zahedi nor anyone on his behalf, ever contacted Miramax regarding its use of any of the Photographs. However, in August 2019, Zahedi contacted Miramax for the first time claiming ownership of one of the Photographs. Miramax denied such claims. To bolster his own position after Miramax denied his claim, Zahedi illegally registered one of the Photographs ("Second Photograph"). The Second Photograph, while similar to the Initial

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

1

CASE No. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

Photograph, is not identical.  However, it clearly originates from the set of Photographs owned by Miramax.

This case is very simple and is determined by answering one question—does Miramax's work for hire agreement, its subsequent copyright registration of the Initial Photograph, and its open and continuous use of the copyrighted works (without objection) since 1994, grant Miramax ownership of the Second Photograph?

That single question can be answered in the first phase of the bifurcated action and thus resolve the entire case.

This Motion is made pursuant to Federal Rule of Civil Procedure 42 on the following grounds:

(1)  The legal and factual issues relating to copyright ownership and damages, and the evidence that will be relevant to those issues, are wholly distinct and separable.  (*See* Memorandum, Section A).

(2)  Bifurcation will promote efficiency, increase convenience for the Court and the parties, and simultaneously adjudicate Miramax's counter-claim.  At bottom, ***Miramax, not Zahedi, is the owner of the Second Photograph.***  A fact that is documented by way of Miramax's prior registered copyright with the U.S. Copyright Office.  Eighteen years after Miramax's copyright registration, Zahedi made an ill-fated claim of copyright ownership against Miramax and expanded his claim to include an additional 26 named alleged licensees[1].  Currently, each separate defendant is subject to invasive discovery requests involving the last two decades.  Bifurcation allows the Court to determine ownership of the photograph at issue first.  If the Court finds that Miramax owns the photograph and, thus, that there was no copyright infringement, the case will be concluded and the remaining defendants dismissed without any further action on their part.  Further, it

---

[1] Currently Zahedi appears to be dismissing some of the Defendants from the suit, but it is unclear what his rationale is for doing this, whether those Defendants reached settlements with him, and/or whether there will be additional defendants.  As of the filing date of this motion, there are fifteen defendants remaining, including Miramax.

adjudicates, in full, Miramax's cross-claim against Zahedi, which is, at its core, an ownership issue.

Deciding the question of ownership first allows this action to conclude without the parties being forced to engage in extensive, costly, and time-consuming discovery relating to damages—particularly expert discovery, which is likely to take place on damages issues. Bifurcation also will spare the Court the necessity of adjudicating anticipated discovery disputes regarding the appropriate scope of discovery into *fifteen defendants'* sensitive and proprietary documents and financial information, as well as other discovery disputes that are expected based on the broad discovery requests already served by Plaintiff. (*See* Memorandum, Section B.) Moreover, ownership and damages issues have no overlap which makes this case prime for bifurcation.

(3) Bifurcation will also shield Defendants from the prejudice they will inevitably suffer if Zahedi is allowed to conduct sweeping discovery on issues he claims are "related" to the issue of damages before defendants have had an opportunity to conclusively prove that Miramax owns the copyright to the Second Photograph. Bifurcation is critical because if the Court rules Miramax owns the copyright (which it does) Zahedi cannot continue his action against the remaining defendants. Allowing the case to move forward against these remaining fourteen defendants who do not have any information regarding ownership and have no liability, is highly prejudicial.

In contrast, Zahedi would <u>not</u> be prejudiced in any way by bifurcating liability and damages discovery; if the lawsuit proceeds beyond the ownership phase, Zahedi will have ample opportunity to conduct discovery relevant to his damages claims. In fact, Zahedi will actually benefit from bifurcation because he will not have to spend money and time propounding and responding to extensive discovery addressing potentially moot discovery and related discovery disputes. Further, based on the February 22, 2022 trial date, there is abundant time to

3

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

1  complete the ownership phase and maintain the trial date for the damages phase.

2  (*See* Memorandum, Section C.)

3       Finally, bifurcation will allow the Court to address statute of limitations

4  issues relating to copyright ownership before the dozens of defendants are forced to

5  respond to extensive discovery requests seeking decades of detailed documents and

6  financial information.  Zahedi's failure to bring any suit for over two decades is

7  telling and effectively bars him from bringing such an action now.

8       This Motion is based upon this Notice, the attached Memorandum of Points

9  and Authorities, the Declaration of Lauren J. Fried, and upon such oral argument as

10  the Court may entertain at the hearing on this Motion.

11       Pursuant to Local Rule 7-3 the parties have met and conferred on September

12  16, 2020.  (Declaration of Lauren J. Fried ("Fried Decl.") ¶ 2.)  Zahedi indicated

13  that he would oppose the motion.  (*Id.*)  Subsequently, the parties met and conferred

14  again on February 18, 2021.  (Fried Decl. ¶¶ 4-7.)  Zahedi indicated his position

15  had not changed and he would oppose the motion.  (*Id.*)

16

17                                MANATT, PHELPS & PHILLIPS, LLP

18

19  DATED:  February 25, 2021

20                          By: /s/ Lauren J. Fried
                                Lauren J. Fried
21                              *Attorneys for Defendant*
                                MIRAMAX, LLC
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................... 1

II.  SUMMARY OF FACTUAL ALLEGATIONS ............................................ 4

III.  THE ACTION SHOULD BE BIFURCATED INTO LIABILITY
AND DAMAGES PHASES ........................................................................ 5

    A.  ISSUES RELATING TO LIABILITY (OWNERSHIP) AND
DAMAGES IN THIS COPYRIGHT ACTION ARE WHOLLY
SEPARATE AND DISTINCT. ............................................................. 6

    B.  BIFURCATING DISCOVERY FAVORS CONVENIENCE OF
THE PARTIES AND THE COURT AS WELL AS JUDICIAL
ECONOMY AND EXPEDIENCE. ....................................................... 8

    C.  THE BALANCE OF THE EQUITIES FAVORS
BIFURCATION. ................................................................................. 12

IV.  CONCLUSION ........................................................................................ 14

CASE No. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

1

# TABLE OF AUTHORITIES

2

3

**Page**

## CASES

4

*Amato v. City of Saratoga Springs,*
5
   170 F.3d 311 (2d Cir. 1999) ................................................................ 5

6

*Avia Group Int'l v. Nike,* Inc.,
   1991 U.S. Dist. LEXIS 20492 (D. Or. Sept. 17, 1991) ..............................passim
7

8

*Bridgeport Music, Inc. v. Justin Combs Pub.,*
   507 F.3d 470 (6th Cir. 2007) ............................................................... 6

9

*Craigslist Inc. v. 3Taps Inc.,*
10
   2013 U.S. Dist. LEXIS 61837 (N.D. Cal. Apr. 29, 2013) ................................ 6

11

*Damiano v. Sony Music Entm't,*
   168 F.R.D. 485 (D.N.J. 1996) .............................................................. 9

12

*EEOC v. Kovacevich "5" Farms,*
13
   2006 U.S. Dist. LEXIS 70798 (E.D. Cal. Sept. 18, 2006) ............................... 6

14

*Gardco Manufacturing, Inc. v. Herst Lighting Co.,*
   820 F.2d 1209 (Fed. Cir. 1987) ............................................................ 5

15

*Giro Sport Design, Inc. v. Pro-Tec, Inc.,*
16
   1989 U.S. Dist. LEXIS 9423 (N.D. Cal. Mar. 16, 1989) ................................ 5

17

*Hayden v Chalfant Press, Inc.,*
   281 F.2d 543 (9th Cir. 1960) ......................................................... 13, 14
18

19

*In re Innotron Diagnostics,*
   800 F.2d 1077 (Fed. Cir. 1986) ..................................................... 5, 6, 13

20

*Loussier v. Universal Music Group, Inc.,*
21
   258 F. Supp. 2d 308 (S.D.N.Y. 2003) ..................................................... 8

22

*M2 Software, Inc. v. Madacy Entm't,*
   421 F.3d 1073 (9th Cir. 2005) ............................................................. 5

23

*Medtronic Xomed, Inc. v. Gyrus Ent. LLC,*
24
   440 F.Supp.2d 1333 (M.D. Fl. 2006) .................................................... 13

25

*Russell William, Ltd. v. ABC Display & Supply, Inc.,*
   1991 U.S. Dist. LEXIS 3814 (E.D.N.Y. Mar. 26, 1991) ............................. 8, 9
26

27

*Slate v. ABC,*
   274 F.R.D. 350 (D.D.C. 2011) ............................................................ 6

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

-ii-

CASE No. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

*Swofford v. B & W, Inc.*,
    336 F.2d 406 (5th Cir. 1964) ........................................................................ 5, 13

*Swofford v. B & W, Inc.*,
    34 F.R.D. 15 (S.D. Tex. 1963), *aff'd*, 336 F.2d 406 (5th Cir. 1964) .................... 7

*Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier*,
    2001 U.S. Dist. LEXIS 10738 (C.D. Cal. May 4, 2001) ...................................... 5

# OTHER AUTHORITIES

Nimmer on Copyright § 12.09 ...................................................................................... 6

Rutter Group, California Practice Guide: Federal Civil Procedure Before
    Trial § 16:160 ...................................................................................................... 6

# RULES

Federal Rule of Civil Procedure 42(b) ................................................................... 5, 6

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On or about October 17, 2003, Defendant Miramax, LLC ("Miramax") received a Certificate of Registration from the U.S. Copyright Office registering Miramax as the copyright owner of a promotional photograph ("Initial Photograph").  The Initial Photograph was part of a set of photographs, commissioned by Miramax of the characters of the award winning film *Pulp Fiction* (collectively, the "Photographs").

Plaintiff Firooz Zahedi ("Zahedi") was engaged in a work for hire capacity by Miramax to take the Photographs, including the Initial Photograph.  Pursuant to Zahedi's work for hire agreement, Miramax was deemed to be the author and owns in perpetuity all right, title, and interest, including without limitation, the worldwide copyright in any and all photographs Zahedi took during the photoshoot and any underlying negatives of such photographs, regardless of whether Miramax has made use of them.

***For 25 years***, Miramax utilized the Initial Photograph (and all other Photographs) in an undisputed manner.  From 1994 until August 2019, neither Zahedi, nor anyone on his behalf, ever contacted Miramax regarding its use of any of the Photographs.  However, in August 2019, Zahedi contacted Miramax for the first time claiming ownership of one of the Photographs.  Miramax denied such claims.  To bolster his own position after Miramax denied his claim, Zahedi illegally registered one of the Photographs ("Second Photograph").

In the decades since *Pulp Fiction's* release, Zahedi has done nothing to substantiate or enforce the rights he claims to have in the Second Photograph.  Over twenty-five years after the Second Photograph was taken, Zahedi chose to file suit against over ***twenty-five defendants***, including Miramax, LLC (collectively, "Defendants"), claiming ownership of the Second Photograph and copyright

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

-1-

CASE No. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

1    infringement.[2]

2           Now, Zahedi seeks to obtain wide-ranging discovery from all Defendants on

3    a plethora of issues, including damages. ***This is premature.*** Zahedi should not be

4    allowed to go forward in this vein until the issue of ownership is determined.  If

5    (rather, when) it is found that Miramax, not Zahedi, owns the copyright in the

6    Second Photograph, Zahedi will have no viable claim of infringement and there will

7    be no basis for damages.  Bifurcation is efficient because there is no overlap

8    between ownership issues and damages.  Further, Plaintiff's current discovery

9    demands request intrusive financial information dating back to well-beyond the

10   statute of limitations.  This issue would be resolved if the case were bifurcated.

11   Accordingly, the liability and damages phases of this case should be bifurcated and

12   no discovery on the issue of damages should proceed until liability is decided.

13   Bifurcation of this action will save the parties and the Court considerable amounts

14   of time and resources on damages-related discovery—including expert discovery—

15   that will be entirely moot if Miramax prevails on its ownership claim.  As a result

16   of bifurcating this action, Miramax intends to prove that there is no copyright

17   liability because Miramax owns the copyright at issue.

18          The Court should grant Defendant Miramax's motion to bifurcate for the

19   following three reasons:

20          **First**, bifurcation is appropriate here because issues related to liability and

21   damages are severable.  Liability and damages issues in this copyright case will

22   involve significantly different discovery.  Liability discovery will center on whether

23   Miramax or Zahedi own the copyright to the Second Photograph.  This is a discrete

24   issue about which very few witnesses have relevant information.  These limited

25   witnesses are Miramax employees, or former employees, and Plaintiff and his

26   _____

[2] A separate issue exists regarding Zahedi's claim against the fifteen remaining defendants as, the Initial Photograph and the Second Photograph are not the same picture.  The photograph used by the fifteen defendants is the Initial Photograph.  Which is copyrighted by Miramax, not Zahedi.  Therefore, for that independent reason, Zahedi has no claim against the remaining fifteen defendants.  A point that will be the subject of a later motion in this action, if the case is not bifurcated.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

agents or managers, or former agents and former managers. ***None of the remaining fourteen Defendants involved in this litigation have any information relating to ownership***.

Moreover, none of the witnesses relevant to Plaintiff's ownership claim have information relating to damages. Damages discovery will include (i) what compensation (if any) Miramax and the other defendants secured for the use of the Second Photograph within the permitted statute of limitations, (ii) industry custom and practice with respect to licensing, and (iii) the value of the Second Photograph. Several of these damages categories will be the subject of expert testimony. Further, this aspect of the litigation will, for the first time, involve the remaining Defendants.

**Second**, bifurcating discovery will save the parties and the Court considerable time and resources. Zahedi's discovery demands relating to damages are incredibly broad and, if permitted, would require over a ***dozen defendants*** to engage in a burdensome search for responsive materials—a task which is objectively unnecessary if Miramax owns the Second Photograph. Alternatively, with bifurcation, ***only one party***, Miramax, would be required to provide initial discovery.

For example, Zahedi has sent requests for production of documents and other discovery to approximately 15 defendants, including those defendants who would not be relevant to, and have no information regarding ownership of the Second Photograph. These requests include: *fifty-nine* individual document requests, *thirty-three* requests for admission, *twenty* individual interrogatories, and multiple deposition notices. (Fried Decl. ¶ 8.) Zahedi's discovery demands require Defendants to retain experts to testify about accounting and apportionment issues and seek disclosure of sensitive and proprietary information, including confidential financial information and internal policies and practices. Moreover, because Zahedi's discovery requests are overbroad and of questionable relevance, the Court

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

1    will likely be burdened with adjudicating discovery disputes.  These burdens will

2    be avoided, however, if the issue of ownership is adjudicated first.  Bifurcation will

3    either narrow the scope of damages discovery or eliminate the need for it

4    altogether.

5           **Third**, the equities favor bifurcating liability and damages discovery.

6    Permitting damages discovery before the issue of ownership is resolved would

7    subject fifteen defendants to needless expense, as well as potentially require them to

8    share sensitive and proprietary information with Zahedi and his counsel.  In

9    contrast, bifurcation will <u>not</u> cause any prejudice to Zahedi, who will have ample

10   opportunity to conduct discovery on damages if the case proceeds beyond the

11   ownership phase.  Further, Zahedi will actually benefit from bifurcation because he

12   will avoid expending money and time on costly discovery disputes.

13          Accordingly, Miramax respectfully requests that this Court bifurcate this

14   action and discovery into a liability (ownership) phase and damages phase, and stay

15   damages discovery until the liability phase is decided.

16   **II.    <u>SUMMARY OF FACTUAL ALLEGATIONS</u>**

17          Zahedi is a photographer residing in Los Angeles California.  (FAC pp. 3:4-

18   5; ¶ 4.)  Zahedi alleges that one of his "most celebrated photographs depicts Uma

19   Thurman in the role of Mia Wallace from the film *Pulp Fiction*" ("Photograph").

20   (FAC pp. 3:10-11.)  Zahedi claims he retained ownership of the copyright for the

21   Second Photograph and only provided Miramax with a limited license to use the

22   Second Photograph as part of promotional posters for the film.  (FAC pp. 3:11-15.)

23   He claims he currently owns the copyright and has registered the copyright with the

24   Copyright Office.  (FAC ¶¶ 34-35, Exh. A.)

25          Zahedi claims that in the years since the film's release, Miramax has sold and

26   licensed the Second Photograph without a license or consent from Zahedi.  (FAC

27   pp. 3:15-17.)  Miramax refutes all of Zahedi's claims of ownership or infringement.

28   The facts will show that Miramax commissioned the Second Photograph as a work

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

4

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

1  for hire, was the first to copyright one of the Photographs (Dkt. 113, Exh. A) owns

2  the Second Photograph, and owes Zahedi nothing.

3  **III.    THE ACTION SHOULD BE BIFURCATED INTO LIABILITY AND**
   **         DAMAGES PHASES**

4

5         Federal Rule of Civil Procedure 42(b) gives the Court broad discretion to

6  bifurcate proceedings "[f]or convenience, to avoid prejudice, or to expedite and

7  economize" a case.  Fed. R. Civ. P. 42(b); *see also Gardco Manufacturing, Inc. v.*

8  *Herst Lighting Co.,* 820 F.2d 1209, 1212 (Fed. Cir. 1987) ("Under rule 42(b), a

9  district court has broad discretion in separating issues and claims for trial as part of

10  its wide discretion in trial management."); *M2 Software, Inc. v. Madacy Entm't*, 421

11  F.3d 1073, 1088 (9th Cir. 2005) (explaining that the court has "broad discretion"

12  when deciding if bifurcation is appropriate).

13        When exercising its discretion to bifurcate a proceeding, the Court considers

14  the following: (1) convenience of the parties and the court; (2) judicial economy

15  and expedience; and (3) avoidance of prejudice.  *See In re Innotron Diagnostics*,

16  800 F.2d 1077, 1084 (Fed. Cir. 1986); *Amato v. City of Saratoga Springs*, 170 F.3d

17  311, 316 (2d Cir. 1999).  Courts must also determine that the issues to be tried are

18  separable and distinct from one another.  *See Swofford v. B & W, Inc.*, 336 F.2d

19  406, 415 (5th Cir. 1964).

20        Bifurcation is appropriate here as the issues of liability (ownership) and

21  damages are separable and distinct from one another, the interests in convenience

22  and judicial economy would be furthered by bifurcation, and Plaintiff would not be

23  prejudiced by bifurcation.  *See, e.g., Yamaha Hatsudoki Kabushiki Kaisha v.*

24  *Bombardier*, 2001 U.S. Dist. LEXIS 10738 (C.D. Cal. May 4, 2001) (bifurcating

25  patent proceedings into liability, damages, and willfulness phases and staying

26  discovery accordingly); *Giro Sport Design, Inc. v. Pro-Tec, Inc.,* 1989 U.S. Dist.

27  LEXIS 9423, 8-9 (N.D. Cal. Mar. 16, 1989) (granting motion to bifurcate liability

28  and damages issues and discovery in a trade dress infringement case because of the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

5

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

complex nature of establishing infringement and assessment of damages, and because "the time and money spent on assessing damages may not be necessary if no liability is found"); The Rutter Group, California Practice Guide: Federal Civil Procedure Before Trial § 16:160.  *See also Craigslist Inc. v. 3Taps Inc.,* 2013 U.S. Dist. LEXIS 61837, 54-55 (N.D. Cal. Apr. 29, 2013) ("The Court concludes that the likelihood of streamlining discovery for and adjudication of the antitrust counterclaims based on the outcome of Craigslist's claims—even if those counterclaims must ultimately proceed—warrants bifurcation.").

Bifurcating this action is "the choice most likely to result in a just final disposition of [this] litigation."  *In re Innotron Diagnostics*, 800 F.2d at 1084.

### A.   <u>Issues Relating to Liability (Ownership) and Damages in this Copyright Action are Wholly Separate and Distinct.</u>

Here, the issues relating to liability and damages are easily separable.  Courts commonly bifurcate proceedings to separate the liability and damages inquiries. *EEOC v. Kovacevich "5" Farms*, 2006 U.S. Dist. LEXIS 70798, 3-4 (E.D. Cal. Sept. 18, 2006) ("Courts within the Ninth Circuit often have bifurcated liability from damages, and Rule 42(b) gives courts the authority to separate trials into liability and damages phases.").  ***Such bifurcation is specifically appropriate in copyright cases, where the issues and evidence relevant to liability are readily separable from the damages inquiry.***  *See, e.g., Avia Group Int'l v. Nike*, Inc., 1991 U.S. Dist. LEXIS 20492, at *4 (D. Or. Sept. 17, 1991) ("[T]he issues of validity, title, infringement, and damages in patent and copyright cases may be separately tried, unless this course will inconvenience the court or seriously prejudice the rights of some of the parties.").  *See also* Nimmer on Copyright § 12.09 ("Courts have discretion to bifurcate the trial into liability and damages phases"); *Slate v. ABC,* 274 F.R.D. 350, 353 (D.D.C. 2011) (in copyright case, discovery regarding liability and damages was bifurcated); *Bridgeport Music, Inc. v. Justin Combs Pub*., 507 F.3d 470, 482 (6th Cir. 2007) (same).

1    Not only are the issues relating to liability and damages easily separable, they

2    are also distinct.  In *Avia Group*, the court held that because the issues relating to

3    damages were not relevant to those relating to liability, bifurcation of the issues and

4    a partial stay of discovery related to damages was appropriate.  *Avia Group*, 1991

5    U.S. Dist. LEXIS 20492, at *9-10, *citing Swofford v. B & W, Inc.*, 34 F.R.D. 15

6    (S.D. Tex. 1963), *aff'd*, 336 F.2d 406, 415 (5th Cir. 1964).  The court specifically

7    explained that the issue of intent or "willful" infringement, for example, related

8    only to damages and not to liability.  *Id*.  The court also placed importance on the

9    fact that the liability issues required different evidence than the damages issues.  *Id*.

10   Similarly, the liability and damages inquiries here involve unrelated issues

11   and call for completely different evidence.  The liability inquiry will center on the

12   issue of ownership—whether Miramax or Zahedi owns the photograph in question.

13   This is a discrete issue about which few witnesses have relevant information.  The

14   witnesses who are likely to have relevant information about the ownership issue are

15   Zahedi, Miramax, and only those of their agents, managers, or employees who were

16   involved with the 1994 photoshoot. *This phase of the action and its associated*

17   *discovery does not involve any of the remaining fourteen defendants*, as none of

18   those defendants were involved with the photoshoot, or have any information about

19   it.  Documents relevant to ownership are also likely to be limited, as they stem from

20   over twenty-five years ago.  The ownership phase will also address Miramax's

21   counter-claim, which is centered on ownership of the Second Photograph.

22   The damages inquiry will delve into distinct issues unrelated to copyright

23   ownership.  Among other things, damages discovery will consist of inquiries into

24   the actual value of the Second Photograph—including any amounts ever received

25   by Zahedi and/or for licensing the Second Photograph, amounts requested by

26   Miramax to license similar works, and typical industry licensing fees for

27   comparable works.  Unlike the evidence required to resolve the question of

28   ownership (lay witnesses testimony), the key evidence and documents relevant to

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

7

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

1  resolving these damages-related questions will include expert reports and
2  testimony, as well as Miramax's highly sensitive internal proprietary business
3  records.

4      Additionally, as Zahedi alleged that Miramax's supposed infringement was
5  willful, a damages phase would inquire into Miramax's "state of mind".  *See Avia*
6  *Group*, 1991 U.S. Dist. LEXIS 20492, at 5-6; *See also Loussier v. Universal Music*
7  *Group, Inc.,* 258 F. Supp. 2d 308, 308-09 (S.D.N.Y. 2003) ("Evidence of a
8  defendant's willful behavior in a copyright infringement case goes towards
9  damages and not liability").  These topics, which are the subject of many of
10 Plaintiff's broad discovery requests, have no relevance whatsoever to copyright
11 ownership.

12     The factual and legal issues with respect to liability and damages can be
13 easily segregated, are distinct, and require different evidence and witnesses.  As
14 such, bifurcation is appropriate in this case.

15  **B.    Bifurcating Discovery Favors Convenience of the Parties and the**
16  **Court as well as Judicial Economy and Expedience.**

17     Bifurcating discovery in this case would further the interests of convenience,
18 judicial economy, and efficiency.  Resolving the issue of copyright ownership first
19 will be of great convenience to the parties as *it will prevent over a dozen*
20 *defendants from prematurely engaging in time consuming and expensive*
21 *discovery*, including expert discovery.  Bifurcation will also conserve judicial
22 resources, including time, that would otherwise be wasted on resolving damages-
23 related issues that may well turn out to be moot.  Overall, "a separate trial on
24 liability will likely result in a simplification of damages issues or the elimination of
25 such an inquiry all together." *Avia Group*, 1991 U.S. Dist. LEXIS 20492, at *2.
26     The court's analysis in a similar copyright case, *Russell William, Ltd. v. ABC*
27 *Display & Supply, Inc.,* 1991 U.S. Dist. LEXIS 3814 (E.D.N.Y. Mar. 26, 1991), is
28 instructive.  There, the plaintiff in a copyright and patent action sought documents

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

8

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

relating to defendant's sales of an allegedly infringing retail display system. *Id.* at *3. The court refused to allow the discovery, concluding that "economy and efficiency will be best served by trying the liability issue first and reaching the question of damages if there is a finding of liability." *Id.* at *2-3. On that basis, the court bifurcated the action into liability and damages phases for purposes of discovery and trial, and stayed discovery on damages issues. *Id. See also Avia Group*, 1991 U.S. Dist. LEXIS 20492, at *2 (explaining that bifurcation into liability and damages phases promotes judicial economy and efficiency because a finding of no infringement would eliminate the need for a damages inquiry); *Damiano v. Sony Music Entm't*, 168 F.R.D. 485, 493 (D.N.J. 1996) (ordering bifurcation of liability and damages discovery because "the relevant information on damages would involve complicated and time consuming issues" which should not be explored until the issue of damages is reached).

Here, Zahedi has already served broad damages-related discovery requests on over a dozen Defendants, and it is readily apparent that this discovery will impose **substantial burdens** and costs on Defendants and the Court. Zahedi has already requested of individual Defendants: *fifty-nine* individual requests for production of documents, *thirty-three* individual requests for admissions, *twenty* individual interrogatories, and multiple deposition notices. (Fried Decl. ¶¶ 8.) ***Within these requests, Plaintiff seeks the production of information and documents going back over twenty-five years***. Moreover, the requests are overbroad and require information outside the statute of limitations, for example:

**REQUEST FOR PRODUCTION NO. 18**

All computer files containing images of any and all of SUBJECT PHOTOGRAPHY, ACCUSED IMAGES, or SUBJECT MERCHANDISE.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

9

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

1

**REQUEST FOR PRODUCTION NO. 35**

2

Any and all DOCUMENTS which constitute, show, reflect, refer to,

3

mention, concern, or may provide evidence of, YOUR income from

4

2010 to the present.

5

**REQUEST FOR PRODUCTION NO. 56:**

6

All DOCUMENTs which constitute, show, or reflect any and all

7

allegations of copyright infringement against YOU, including without

8

limitation cease and desist letters and civil court or other complaints.

9

(Fried Decl. ¶¶ 8-9, Exhs. A, B, C.)

10

These requests, tendered to Defendants Amazon, Torrid, Walmart, and Hot

11

Topic, among others are patently unreasonable and without bifurcation would

12

require an undue amount of time and expense for all Defendants, especially those

13

who have no pertinent information regarding ownership and ultimately promote

14

expensive discovery disputes. ***Moreover, asking multiple major corporate***

15

***Defendant for their income statements and all documents relating to their income***

16

***for the last eleven years is clearly irrelevant to any issue in this action.*** These are

17

simply several of many examples of Plaintiff's overreaching discovery.

18

Plaintiff also served damages-related discovery requests seeking sweepingly

19

broad information about over a dozen Defendants' financials, internal policies, and

20

contracts. Plaintiff should not be permitted to seek and obtain disclosure of

21

Defendants' confidential and proprietary information before the issues of ownership

22

and liability are adjudicated.

23

Plaintiff's requests are particularly troublesome in light of the fact that with

24

the exception of Miramax, the remaining Defendants, have no involvement with the

25

original production or licensing of the Second Photograph. If Plaintiff's requests

26

are not narrowed in scope, these Defendants face a heavy discovery burden despite

27

the fact that they are not likely to have any relevant information pertaining to the

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

10

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

1    validity of the license obtained by the other Defendants, or any other liability

2    issues.

3          The discovery will not only burden Defendants, but will also impose

4    substantial burdens on the Court.  As described above, Zahedi's discovery requests

5    are overly broad and unduly burdensome.  Many requests are also irrelevant and

6    outside the scope of this litigation.  Miramax and likely all other Defendants will

7    object to these requests.  Miramax anticipates that these discovery disputes will

8    ultimately have to be resolved by the Court.

9          Moreover, if the matter proceeds immediately with the damages phase

10   concurrently with the ownership phase it will require Defendants to immediately

11   retain experts to testify about customs and practices and accounting and

12   apportionment issues.  Other damages issues, including the licensing fees that

13   merchandisers typically pay when licensing works that are similar to the Second

14   Photograph, will also require expert testimony.  The parties will inevitably be

15   required to expend substantial amounts of time and money in engaging and

16   deposing these experts.

17         The vast majority of this burdensome, time consuming, and expensive

18   discovery may be avoided by bifurcation.  This is a simple question of upholding

19   Miramax's rights, if the Court agrees that the Miramax owns the Second

20   Photograph, the parties avoid the significant expenses associated with damages

21   discovery and the Court will be spared from refereeing the anticipated discovery

22   disputes concerning Zahedi's over-broad discovery requests.

23         In short, conducting discovery into copyright ownership first, and deferring

24   discovery into damages issues until the Court has considered ownership of the

25   Second Photograph, will promote the interests of convenience and efficiency for the

26   parties on the one hand, and the interests of judicial economy for the Court on the

27   other hand.

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

11

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

1

**C.**     **The Balance of the Equities Favors Bifurcation.**

2      Proceeding with the liability and damages issues simultaneously will

3 prejudice Miramax and the other Defendants.  Defendants would be forced to

4 expend substantial amounts of money and resources to respond to onerous

5 discovery requests about damages, including the cost of protracted discovery

6 disputes, and potentially require them to reveal confidential and proprietary

7 information about their practices and licensing (including potential discovery into

8 revenues, copyright practices and policies, and the responsibilities and management

9 of personnel), before it is shown that there is any realistic possibility that liability

10 will be found.  Such discovery would be especially burdensome on all Defendants

11 aside from Miramax, as those Defendants had no involvement in the 1994

12 photoshoot or the licensing of the Second Photograph and will not have any

13 information or documents relevant to liability.  It would be highly prejudicial and

14 unfair to require these parties to disclose confidential information and spend

15 resources on damages-related discovery when a finding for Miramax on copyright

16 ownership would obviate the need for such disclosure and expenditures.

17      Bifurcation also benefits Zahedi.  Ownership is the key issue in this dispute

18 and Zahedi will be subject to the same extensive expenses if the action is not

19 bifurcated.  In the lead up to filing this motion, the parties met and conferred,

20 Zahedi refused to stipulate to bifurcation. ***Given the obvious benefits bifurcation***

21 ***affords Zahedi, the only reason to oppose this motion is to leverage defendants***

22 ***into a settlement.***

23      Bifurcation would eliminate the prejudice faced by Defendants and would in

24 no way prejudice Zahedi.  In fact, the question of prejudice in the context of

25 bifurcation is closely tied to the separability and distinctness of the issues to be

26 bifurcated, analyzed in detail above.  That is, the likelihood of prejudice is greater

27 where the issues to be bifurcated are interwoven—as trying overlapping issues

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

12

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

separately can cause confusion or otherwise result in injustice.  *See Swofford*, 336 F.2d at 415; *Avia Group*, 1991 U.S. Dist. LEXIS 20492, at *3.

Here, the issues of liability and damages are completely distinct.  As such, bifurcation creates no risk of prejudice to Plaintiff.  *See Avia Group*, 1991 U.S. Dist. LEXIS 20492, at *3 (concluding that Plaintiff would not be prejudiced by bifurcation "because this court has found no substantial overlap between the issues of liability and damages").

Indeed, here the clear segregation of the witnesses and facts relevant to the issues of liability and damages may actually compel bifurcation in order to avoid prejudice to Defendants.  *See In re Innotron Diagnostics* 800 F.2d at 1085 ("Avoidance of prejudice and confusion is served in trying first patent issues, without injecting the different counterclaim issues which require different proof and different witnesses."); *Medtronic Xomed, Inc. v. Gyrus Ent. LLC*, 440 F.Supp.2d 1333, 1337 (M.D. Fl. 2006) (bifurcating a patent infringement trial into two phases, a liability phase and a damages phase, where defendant established that the issues in the case as to liability and damages were sufficiently distinct that trying both issues simultaneously would lead to confusion).

Ultimately, while bifurcation would alleviate the burdens on Defendants, it would not only leave Zahedi unharmed, but would actually benefit him.  If the case were bifurcated and Zahedi's claims survived the liability phase, Zahedi would still be able to conduct appropriate damages discovery.  Moreover, given the February 22, 2022 trial date, it would be possible to keep the current trial date for the damages phase, and move up the issue of liability, thereby obviating any possible prejudice to Zahedi.

Further the absence of any prejudice to Zahedi strongly counsels in favor of bifurcated discovery.  For example, in *Hayden v Chalfant Press, Inc.,* 281 F.2d 543, 544 (9th Cir. 1960), the Ninth Circuit affirmed a trial court's decision to bifurcate discovery in a copyright case involving alleged infringement of maps.  There, the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

CASE NO. 2:20-CV-04512-DMG-EX
MOTION TO BIFURCATE AND STAY

plaintiff served interrogatories and sought deposition testimony regarding damages; and the defendant objected. *Id.* Instead of allowing discovery to move forward, the trial court held that it should first determine liability issues, and if liability was established, a special master would be appointed to decide damages issues. *Id.* The Ninth Circuit held that the decision was well within the trial court's discretion, noting that it was "unable to see any prejudice" suffered by the plaintiff. *Id.*

This Court should likewise stay discovery on damages issues until there is cause to believe that liability may be found. Doing so will avoid prejudice to Miramax and the other Defendants, without having any negative impact on Plaintiff.

## IV.    CONCLUSION

Bifurcating discovery into liability (ownership) and damages phases will promote convenience and efficiency, and will protect Defendants from burdensome and oppressive discovery without causing any prejudice to Plaintiff. Accordingly, Defendants respectfully request that the Court: (1) bifurcate discovery into a liability phase and a damages phase; and (2) stay discovery on issues related solely to damages until the Court adjudicates the issue of copyright ownership.

MANATT, PHELPS & PHILLIPS, LLP

DATED:  February 25, 2021

By: /s/ Lauren J. Fried
      Lauren J. Fried
      *Attorneys for Defendant*
      MIRAMAX, LLC

327219283.1