Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Trevor W. Barrett (SBN 287174)
tbarrett@donigerlawfirm.com
Frank R. Trechsel (SBN 312199)
ftrechsel@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIROOZ ZAHEDI,<br><br>Plaintiff,<br><br>v.<br><br>MIRAMAX, LLC; et al.,<br><br>Defendants. | Case No.: 2:20-cv-04512-DMG-E<br>*Honorable Dolly M. Gee presiding*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION AS TO DEFENDANTS' LIABILITY FOR COPYRIGHT INFRINGEMENT**<br><br>**[Declarations of and Firooz Zahedi, Janet Botaish, and Scott Alan Burroughs; Statement of Uncontroverted Facts; Request for Judicial Notice; [Proposed] Order submitted herewith]**<br><br>Date:    October 22, 2021<br>Time:    2:00 p.m.<br>Courtroom:  8C |
| AND RELATED COUNTERCLAIMS | |

i

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** at 2:00 pm on October 22, 2021 in Courtroom 8C, located at the United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Courtroom 8C, 8th Floor, Plaintiff, Firooz Zahedi, will and hereby does move, pursuant to Fed. R. Civ. P. 56, for summary adjudication on Plaintiff Firooz Zahedi's ownership of the Photograph at issue and on Defendants' statute of limitations defense.

This motion is made on the grounds that there are no triable issues of fact regarding: (1) Zahedi's creation and ownership of the photograph at issue; (2) the failure of Miramax's counterclaims for sole and joint ownership and authorship of the photograph at issue; and (2) the failure of Miramax's statute of limitations and other defenses.

This motion is based on the Memorandum of Points and Authorities, the Statement of Uncontroverted Facts, the Declarations of Scott Alan Burroughs, Firooz Zahedi, and Janet Botaish, the papers and evidence on file in this case, and such evidence and argument as may be received at the hearing. This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 3, 2021. Scott Alan Burroughs Declaration ("Burroughs Decl."), ¶ 3.

Respectfully submitted,

Dated: September 10, 2021      By:   */s/ Scott Alan Burroughs*
Scott Alan Burroughs, Esq.
Frank R. Trechsel, Esq.
DONIGER / BURROUGHS
Attorneys for Plaintiff
Firooz Zahedi

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................1

II.   STATEMENT OF FACTS..................................................1

III.  LEGAL STANDARD.........................................................4

IV.   THIS MOTION SHOULD BE GRANT...............................4

    A. Zahedi authored and owns the copyright for the Zahedi
       Photograph...............................................................4

    B. Zahedi never lost his copyright in the Zahedi Photograph............5

       1. The Zahedi Photograph was not created as a work-for-
         hire...............................................................5

       2. Zahedi never signed a contract assigning his
         copyright...........................................................5

    C. The Zahedi Photograph is not a joint work of authorship............7

       1. The Zahedi Photograph is not a "joint work"..................7

         a. Miramax did not make a copyrightable
           contribution...................................................8

         b. Miramax was not an author of the Zahedi
           Photograph....................................................9

            i. Zahedi was the master mind that gave effect to the
              idea.......................................................9

            ii. There was no objective manifestation of a shared
              intent to be co-authors.............................10

            iii. The audience appeal is not affected by Miramax's
              contributions.........................................10

         c. There was no intent to merge contributions into a final
           work.........................................................11

    D. No "implied license" was granted.......................................11

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E.  **The Poster is a derivative work and Miramax II's copyright ownership extends only to Miramax's additions to the Zahedi Photograph**……………………………………………**13**

F.  **Miramax's Registration does not cover the Zahedi Photograph**….**15**

G.  **Miramax II's Registration is invalid**………………………………**16**

H.  **Miramax II owns no copyrights in the Zahedi Photograph, the Poster, or any derivative**…………………………………………..**17**

I.  **Miramax II did not own the right to sublicense**……………………**19**

J.  **Miramax II's defenses and counterclaims violate Section 204 and fail**………………………………………………………………..**19**

   1.  **Zahedi filed this case within the statute of limitations**…….**20**

   2.  **Zahedi's lack of knowledge of Miramax's infringement was reasonable and any damages limitation would apply to the ReAction toy dolls**…………………………………………**22**

   3.  **Zahedi is entitled to the three-year lookback period for damages**………………………………………………………**24**

V.  **SUMMARY ADJUDICATION IS PROPER**……………………………..**25**

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Aalmuhammed v. Lee,*
  202 F.3d 1227 (9th Cir. 2000) ............................................................ 8, 9

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ............................................................................... 4

*Arica Inst., Inc. v. Palmer,*
  970 F.2d 1067 (2d Cir.1992) ................................................................. 9

*Ashton-Tate Corp. v. Ross,*
  916 F.2d 516 (9th Cir. 1990) .............................................................. 8, 9

*Asset Marketing Systems, Inc. v. Gagnon,*
  542 F.3d 748 (9th Cir. 2008) ............................................................... 12

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,*
  522 U.S. 192, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) ........................ 24

*Bean v. Pearson Educ., Inc.,*
  949 F.Supp. 2d 941 (D. Ariz. 2013) .................................................... 12

*Bell v. Blaze Magazine,*
  2001 WL 262718 (S.D.N.Y. 2001) ....................................................... 9

*Bell v. Wilmott Storage Servs., LLC,*
  2021 WL 4097499 (9th Cir. 2021) ...................................................... 14

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ............................................................................... 4

*Cmty. for Creative Non-Violence v. Reid,*
  490 U.S. 730 (1989) ............................................................................... 5

*Corbello v. DeVito,*
  777 F.3d 1058 (9th Cir. 2015) ............................................................. 11

*Crispin v. Christian Audigier, Inc.,*
  839 F. Supp. 2d 1086 (C.D. Cal. 2011) ........................................... 6, 12

*Cunningham v. Seymour,*
  2012 WL 12894699 (C.D. Cal. 2012) ............................................ 4, 5, 7

*DC Comics v. Towle,*
  802 F.3d 1012 (9th Cir. 2015) ........................................................ 13, 14

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC,*
  870 F.3d 978 (9th Cir. 2017) ............................................................... 19

*Effects Assocs. v. Cohen,*
  908 F.2d 555 (9th Cir. 1990) ................................................................. 6

*Fioranelli v. CBS Broad. Inc.,*
  2021 WL 3372695 (S.D.N.Y.  2021) .................................................. 23

v

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
  654 F.3d 958 (9th Cir. 2011) ............................................................ 19, 20
*Foad Consulting Group, Inc. v. Azzalino*,
  270 F.2d 821 (9th Cir. 2001) ................................................................... 12
*Foad*,
  270 F.3d ..................................................................................................... 13
*Foster v. Lee*,
  93 F. Supp. 3d 223 (S.D.N.Y. 2015) ................................................... 8, 10
*Garcia v. Google*,
  786 F.3d 733 (9th Cir. 2015) ................................................................... 11
*Gardner*,
  279 F.3d ........................................................................................... 17, 18, 19
*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985) .................................................................................... 8
*Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*,
  399 F. Supp. 3d 120 (S.D.N.Y. 2019) ..................................................... 13
*Jules Jordan Video, Inv. v. 144942 Canada, Inc.*,
  617 F.3d 1146 (9th Cir. 2010) .................................................................... 5
*Konigsberg Int'l Inc. v. Rice*,
  16 F.3d 355 (9th Cir.1994) ................................................................. 7, 11
*L.A. Printex Indus., Inc. v. G&G Multitex, Inc.*,
  2010 WL 11520186 (C.D.CA 2010) ........................................................ 19
*Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*,
  232 F. Supp. 3d 384 (S.D.N.Y. 2017) ............................................... 10, 11
*Masi v. Moguldom Media Grp. LLC*,
  2019 WL 3287819 (S.D.N.Y. 2019) ........................................................ 23
*Miller v. Glenn Miller Productions, Inc.*,
  454 F.3d 975 (9th Cir. 2006) ................................................................... 19
*Morrill v. Smashing Pumpkins*,
  157 F. Supp. 2d 1120 (C.D. Cal. 2001) ................................................. 7, 9
*Oddo v. Ries*,
  743 F.2d 630 ........................................................................................ 6, 12
*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  971 F.3d 1042 (9th Cir. 2020) ................................................................. 24
*Palmer/Kane LLC v. Rosen Book Works LLC*,
  2016 WL 3042895 (S.D.N.Y. 2016) ........................................................ 17
*Pamfiloff v. Giant Recs., Inc.*,
  794 F. Supp. 933 (N.D.CA 1992) ............................................................ 20
*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014) ...................................................... 20, 21, 23, 24

vi

*Pincay v. Andrews*,
   238 F.3d 1106 (9th Cir. 2001) ................................................................. 21

*Polar Bear Prods. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) ...................................................... 21, 22, 25

*Psihoyos v. Pearson Educ. Inc.*,
   855 F.Supp.2d 103 (S.D.N.Y. 2012) ....................................................... 12

*Radio Television Espanola S.A. v. New World Entertainment, Ltd.*,
   183 F.3d 922 (9th Cir. 1999) ........................................................... 6, 7, 20

*Robertson v. Burdon*,
   2019 WL 2141971 (C.D. Cal. 2019) ....................................................... 11

*Roley v. New World Pictures, Ltd.*,
   19 F.3d 479 (9th Cir. 1994) .............................................................. 20, 25

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) .......................................................... 4, 9, 12

*Sapiano v. Millenium Ent., LLC*,
   2013 WL 12120262 (C.D. Cal. Nov. 14, 2013) ............................ 17, 18, 19

*SHL Imaging, Inc. v. Artisan House, Inc.*,
   117 F.Supp.2d 301 (S.D.N.Y. 2000) ....................................................... 12

*SQL Sols., Inc. v. Oracle Corp.*,
   1991 WL 626458 (N.D. Cal. Dec. 1991) ................................................. 18

*Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*,
   2021 WL 566500 at 6* (C.D. Cal. 2021) ........................................... 21, 23

*Stewart v. Abend*,
   495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) ................ 14, 15, 16

*Stone v. Williams*,
   970 F.2d 1043 (C.A.2 1992) ................................................................... 21

*Tarin v. County of Los Angeles*,
   123 F. 3d 1259 (9th Cir. 1997) .................................................................. 4

*Taylor v. Metro-Goldwyn-Mayer Studios*,
   115 F. Supp. 156 (S.D. Cal. 1953) ............................................................. 8

*Trubowitch v. Riverbank Canning Co.*,
   30 Cal.2d 335 (1947) ............................................................................. 18

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
   692 F.3d 1009 (9th Cir. 2012) ................................................................ 14

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
   959 F.3d 1194 (2020) ............................................................................. 17

*Valente-Kritzer Video v. Pinckney*,
   881 F.2d 772 (9th Cir. 1989) .................................................................. 20

*Viacom Intern. Inc. v. Fanzine Intern. Inc.*,
   2000 WL 1854903 (S.D.N.Y. July 12, 2000) .......................................... 12

vii

*Weinstein Co. v. Smokewood Ent. Grp., LLC,*
  664 F. Supp. 2d 332 (S.D.N.Y. 2009) ............................................................ 7
*Yellowcake, Inc. v. Hyphy Music, Inc.,* 1:20-cv-0988 AWI BAM,
  2021 WL 3052535 ........................................................................ 8, 20

Statutes

17 U.S.C. §411(b)(1) ......................................................................... 16
17 U.S.C. § 101 .................................................................. 5, 7, 13, 17
17 U.S.C. § 102(a) .............................................................................. 8
17 U.S.C. § 103(b) ...................................................................... 15, 16
17 U.S.C. § 106 ................................................................................ 14
17 U.S.C. § 201(a) .............................................................................. 4
17 U.S.C. § 202(d)(2) ....................................................................... 18
17 U.S.C. § 204(a) ........................................................................... 6, 7
17 U.S.C. § 411(b)(2) ...................................................................... 17
17 U.S.C. § 501(b) ........................................................................... 20
17 U.S.C. § 507(b) ..................................................................... 20, 23

Rules

Fed. R. Civ. P. 56 ............................................................................... 2

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

### I.       INTRODUCTION

In 1994, Firooz Zahedi created an iconic photograph depicting the actress Uma Thurman ("Zahedi Photograph"). The Zahedi Photograph depicts Thurman in costumery that evinces her character Mia Wallace from the film *Pulp Fiction* (the "Film"), though, notably, neither the Zahedi Photograph, nor the set created for said photograph, appear in the Film. When Zahedi captured said photograph, he was not employed by the Film's producer and owner, Miramax Film Corp. ("Miramax"), and he never executed any written agreement divesting him of his copyright ownership. Rather, he orally licensed the Zahedi Photograph to Miramax to incorporate as the source artwork for a derivative physical poster that would be used to publicize the Film's release (the "Poster"). Miramax, though, infringed Zahedi's copyrights by far exceeding the license's scope, exploiting the Zahedi Photograph and Poster on merchandise and streaming platforms, while also unlawfully assigning and sublicensing Zahedi's copyright to third parties for exploitation, including Defendant Miramax, LLC ("Miramax II"). This motion should be granted and Miramax II should be held liable for copyright infringement.

### II.      STATEMENT OF FACTS

In 1994, Miramax asked Zahedi's agent, Janet Botaish ("Botaish"), if Zahedi would create publicity photographs depicting the cast of the Film. Plaintiff's Statement of Undisputed Material Facts ("SUF") 1. Miramax's budget for the photoshoot was far below Zahedi's standard fee but he liked the Film's script and developed a concept he wanted to execute. SUF 2,3. Zahedi, who was not an employee of Miramax, accepted the low fee on the condition that he have the freedom to execute his concept. SUF 4. He was paid $10,000.00 for the work. SUF 5.

Miramax, in negotiating the license for the Zahedi Photograph ("Zahedi License"), requested and received only the right to use said photograph to publicize the Film's release, primarily as the source art for a physical poster to promote the Film. SUF 6. Miramax and Zahedi, through Botaish, orally entered into the Zahedi License, and Zahedi

1  never executed a written license, assignment, or work-for-hire with Miramax. SUF 7.

2       This accords with Miramax's business practices in 1994, as confirmed by Pamela

3  Lubell, who negotiated the Zahedi License on behalf of Miramax. She confirmed that

4  Miramax's business practices in 1994 did not include procuring executed photographer

5  contracts. SUF 8. She further confirmed that she was unaware of any contract executed

6  by Zahedi and that the only documentation relating to the Zahedi License were "faxes"

7  sent between her and Botaish. SUF 9. Lubell testified "[t]here weren't contracts. They

8  were just written, faxed because we didn't have computers." SUF 10. Miramax at no time

9  requested or negotiated the right to use, license, assign, or sub-license either the Zahedi

10  Photograph or Poster or exploit same for merchandise, streaming, or anything other than

11  the promotion rights granted by the Zahedi License. SUF 11.

12       On April 7, 1994, Zahedi created photographs of the Film's cast at his private

13  studio. SUF 12. He captured photographs of Uma Thurman alone, including the Zahedi

14  Photograph. SUF 13. For the Zahedi Photograph setup, he engaged Rick Floyd and

15  directed him in constructing a "seedy motel room" set. SUF 14. Zahedi was inspired by

16  "film noir" pulp fiction books of the 50's and 60's as well as the archetypal "femme

17  fatale" characters. SUF 15.

18       Zahedi instructed Floyd to populate the set with props such as a gun, cigarettes,

19  ashtray, lighter, and paperback book, and to decorate the set with the comforter for the

20  bed and an old lamp. SUF 16. Zahedi also selected Thurman's shoes. SUF 17. Zahedi

21  directed Thurman, posing her in various positions, including the pose found in the Zahedi

22  Photograph. SUF 18. Zahedi also, when creating the Zahedi Photograph, chose the angle,

23  lighting, composition, lens, camera, technical settings, aperture, and when to release the

24  shutter. SUF 19. Zahedi made all creative decisions regarding the creation of the Zahedi

25  Photograph. SUF 20. Miramax's witnesses concede that Miramax provided only "ideas"

26  for the shoot while Zahedi created or "fixed" the Zahedi Photograph. SUF 21, 22.

27       Per the Zahedi License, Zahedi provided the Zahedi Photograph to Miramax,

28  which then, using it as source art, created the Poster as a derivative work. SUF 23. Zahedi

1   further contributed to the Poster's creation by proposing Miramax add patina to the
2   Poster to make it appear worn like the covers of mid-century paperback books. SUF 24.
3   Miramax added text and graphics and made slight alterations to the Zahedi Photograph
4   by, for example, adjusting the location of the gun, to finalize the Poster. SUF 25.

5       In 1994, Miramax promoted the Film's release with the Poster and did not use the
6   Zahedi Photograph for any purpose other than publicity, or sublicense the work, at any
7   time. But, *18 years later*, Defendant Miramax II entered into an unlawful 2012 sublicense
8   permitting a third party, Rabbit Tanaka, to distribute home goods bearing the Zahedi
9   Photograph and entered into numerous other sublicenses for the Zahedi Photograph's
10  copyrights on dates thereafter.  SUF 26, 27. It did not advise Zahedi of any sublicenses.

11      Zahedi, after creating the Zahedi Photograph, has consistently displayed, marketed,
12  and sold prints and books incorporating the Zahedi Photograph. SUF 87. Zahedi has
13  always been credited as the author of said photograph, even on the award the Film's
14  publicity campaign received. SUF 28. After the Film's release, in 2003, Miramax
15  registered the Poster with the Copyright Office, representing in its application that it was
16  *not* claiming authorship or ownership of the Zahedi Photograph. SUF 29.

17      In 2010, Filmyard Holdings purchased Miramax and Miramax ceased doing
18  business. SUF 30. In October 2011, Miramax II was formed, and is now owned by beIN
19  Media Group and ViacomCBS. SUF 31. Miramax II exploits the Poster and Zahedi
20  Photograph copyrights but has not produced any chain-of-title evidence proving that
21  Miramax transferred to it the copyrights or registration related to said works, and no
22  recordation of the related copyright registration has been filed with the Copyright Office.
23  SUF 32.

24      Zahedi saw the Zahedi Photograph used in the Poster to promote the Film in 1994
25  but did not see it used on merchandise or outside of the Poster until 2019, when he
26  received a pair of socks bearing a copy of the Zahedi Photograph. SUF 33. Earlier, in
27  2015, Zahedi had seen the Poster used on *packaging* for a Mia Wallace toy action figure
28  sold by "ReAction Figures," but did not see the Zahedi Photograph used individually, or

- 3 -

1   either image used on actual merchandise, until 2019. SUF 34. Miramax identified no

2   license establishing that the ReAction toy was an authorized Miramax product. SUF 35.

3   Upon discovery of the infringement in 2019, Zahedi registered the Zahedi Photograph's

4   copyright and filed this case on May 19, 2020. SUF 36.

5          **III.   LEGAL STANDARD**

6          Summary judgment must be granted if the evidence, when viewed in the light most

7   favorable to the non-moving party, shows that there is no genuine issue as to any material

8   fact. Fed. R. Civ. P. §56(c); *Tarin v. County of Los Angeles*, 123 F. 3d 1259, 1263 (9th

9   Cir. 1997). The moving party must shift the burden by presenting evidence to establish

10  the absence of any issues of material fact, and the non-moving party must provide

11  specific facts that create a material issue. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

12  A mere scintilla of evidence is insufficient; "there must be evidence on which the jury

13  could reasonably find for the [non-movant]." *Id*., quoting *Anderson v. Liberty Lobby,

14  Inc*., 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a

15  party who fails to make a showing sufficient to establish the existence of an element

16  essential to that party's case, and on which that party will bear the burden of proof at

17  trial." *Celotex*, 477 U.S. at 322. No genuine issue of material fact exists here.

18         **IV.   THIS MOTION SHOULD BE GRANTED**

19         Zahedi was never divested of his copyright in the Zahedi Photograph and the

20  Miramax entities unlawfully exploited the Zahedi Photograph beyond the scope of the

21  Zahedi License. And Miramax's claim of ownership, and defenses, fail, as follows.

22         **A.   Zahedi authored and owns the copyright for the Zahedi Photograph**

23         Zahedi created and owns the Zahedi Photograph. He secured his copyright at the

24  time of creation as a "copyright vests initially in the author or authors of a work." *S.O.S.,

25  Inc. v. Payday, Inc*., 886 F.2d 1081, 1085 (9th Cir. 1989), citing 17 U.S.C. § 201(a); see

26  also *Cunningham v. Seymour*, No. CV1108095DMGAJWX, 2012 WL 12894699, at *3

27  (C.D. Cal. 2012) (same). And it is axiomatic that "[c]opyright protection subsists from

28  the moment the work is 'fixed in any tangible medium of expression.'" *S.O.S., Inc*., at

- 4 -

1085 (citation omitted). The Zahedi Photograph was captured by Zahedi in his private

studio, using a set and props for which he directed the creation and procurement. SUF 37.

Zahedi created the photograph using his camera and lens, and the photograph was the

result of his creative decisions relating to composition, angle, lighting, posing, aperture,

timing, and feel. SUF 38. Thus, Zahedi obtained the work's copyright upon its fixation.

### B.      Zahedi never lost his copyright in the Zahedi Photograph

Zahedi was never an employee of Miramax and never signed any contract

divesting him his copyright in the Zahedi Photograph. He thus owns same.

#### 1.      The Zahedi Photograph was not created as a work-for-hire

Miramax's claim that it owns the Zahedi Photograph copyright as a work-for-hire

fails because Zahedi was never a Miramax employee[1] and there is no written work-for-

hire agreement between Miramax and Zahedi. "[T]he Copyright Act states in no

uncertain terms that a "work made for hire" is one where the parties "expressly agree in **a**

**written instrument signed by them** that the work shall be considered a work made for

hire." *Cunningham*, 2012 WL 12894699, at *3 (emphasis added by the court). If there is

no writing, then a work cannot be a commissioned or specially ordered "work for hire."

*Jules Jordan Video, Inv. v. 144942 Canada, Inc.,* 617 F.3d 1146, 1155 (9th Cir. 2010*)*;

see also 17 U.S.C. § 101 (parties must "expressly agree" in signed writing). No written

agreement exists and Zahedi was not a Miramax employee. SUF 39. The defense fails.

#### 2.      Zahedi never signed a contract assigning his copyright

Miramax II's claim that Miramax obtained Zahedi's copyright in the Zahedi

Photograph, via an oral "buyout," also fails. Initially, Miramax II waived this defense

because it did not assert that it obtained a "buyout," which was either an assignment or

---

[1] This cannot be disputed. Miramax II conceded he was not an employee and all relevant
factors establish the same: the project required great skill, he used his own camera and
equipment in his own studio, the relationship was of short duration, Miramax had no right
to assign Zahedi additional projects and had no say as to when or how long to work, he
was paid a flat-fee of $10,000.00, without tax deductions, and he received no benefits.
*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 750–51 (1989)(listing factors).

exclusive express license,[2] to exploit the work in its Answer, but averred that the only transfer it received from Zahedi was a "work-for-hire" or "implied license." See Dkt. No. 113, pgs. 9-13. Miramax II's claim of a "buyout" or other exclusive transfer also fails because Section 204 of the Copyright Act states that transfers of copyright are invalid unless the transfer "is in writing and signed by the owner of the rights." 17 U.S.C. § 204(a). This Section "invalidates a purported transfer of ownership unless it is in writing." *Effects Assocs. v. Cohen*, 908 F.2d 555, 556 (9th Cir. 1990)(citations omitted). Zahedi never signed a written transfer for the Zahedi Photograph copyright. SUF 40. As such, Miramax II's claimed ownership of said copyright does "not comply with section 204(a)'s simple requirements; it is therefore invalid and unenforceable." *Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1091 (C.D. Cal. 2011).[3]

Miramax II has not produced *any* written transfer, let alone one executed by Zahedi. SUF 41. This is not surprising because Lubell, the Miramax representative that negotiated the Zahedi License, testified that under Miramax's standard business practices in 1994, it "didn't do contracts" with photographers. SUF 42.[4] Lubell further confirmed that she was unaware of any transfer with Zahedi's signature. SUF 43. Instead, Miramax claims it negotiated the Zahedi License through a series of faxes. SUF 44.

Assuming these faxes were sent, a series of faxes, even when accompanied by deal memoranda relating to an ownership transfer, is insufficient to transfer copyright under Section 204(a). *See Radio Television Espanola S.A. v. New World Entertainment,*

---

[2] "Express license" is an affirmative defense. See *Oddo v. Ries*, 743 F.2d 630 n. 6 (9th Cir.1984) (license must be affirmatively pled).

[3] *Effects Associates* states: the "rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do." 908 F.2d 557. Indeed, "[c]ommon sense tells us that agreements should routinely be put in writing." *Id.*

[4] While this may have changed later – Miramax produced certain photographer agreements from the following year, 1995, including one related to the film *Slingblade* – this was the case in 1994. SUF 45.

*Ltd.,* 183 F.3d 922, 927 (9th Cir. 1999) (unsigned transfers are "ineffective.")  In *Radio,* the Court found that "a fax referencing an alleged understanding regarding a license agreement [and] discussing some of the details of the agreement did not satisfy § 204(a)[.]" *Id.* Here, Miramax failed to obtain the necessary signed transfer.

Even assuming, *arguendo*, that Zahedi and Miramax *intended* to transfer the copyright the Zahedi Photograph (which they didn't), this would not effect a transfer of ownership because the writing requirement applies even if all other evidence indicates an intent to transfer. *Cunningham*, 2012 WL 12894699, at *4. Indeed, even a transcription of a videotape where the copyright holder purports to transfer the copyright "does not meet the requirement of a [']written instrument signed by['] the parties." Id.[5]

Given the policy considerations, even when an intent-to-transfer if obvious (it isn't here), no transfer occurs without a signed writing. See *Konigsberg Int'l Inc. v. Rice,* 16 F.3d 355, 356–57 (9th Cir.1994) (letter referencing oral agreement fails).  Zahedi did not execute a written transfer and faxes are insufficient. SUF 46. The "buyout" claim fails.

## C.    The Zahedi Photograph is not a joint work of authorship

Miramax II claims inconsistently that it "bought out" the Zahedi Photograph's copyright *and* had an implied license to use it *and* that the Zahedi Photograph is a joint work of authorship for which it jointly owns the copyright with Zahedi. See Dkt. 113, ¶ 54-57. Whatever its actual claim , Zahedi alone authored the Zahedi Photograph.

### 1.    The Zahedi Photograph is not a "joint work"

A "joint work" is one "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." *Morrill v. Smashing Pumpkins*, 157 F. Supp. 2d 1120, 1123 (C.D. Cal. 2001), quoting 17 U.S.C. § 101. A "joint work" has four requirements: (1) a copyrightable work,

---

[5] And neither Miramax's claimed or actual practices nor the "norms" of the film industry counsel a different result: "Congress did not exempt parties in the film industry from the requirements of the Copyright Act." *Weinstein Co. v. Smokewood Ent. Grp., LLC*, 664 F. Supp. 2d 332, 343 (S.D.N.Y. 2009)(signed writing required).

1  (2) two or more authors, (3) the authors intend for their contributions to be merged into

2  inseparable or interdependent parts of a unitary whole, and (4) each author made an

3  independently copyrightable contribution to the work. *Yellowcake, Inc. v. Hyphy Music,*

4  *Inc*., 1:20-cv-0988 AWI BAM, 2021 WL 3052535, at *6, citing *Aalmuhammed v. Lee*,

5  202 F.3d 1227, 1231 (9ᵗʰ Cir. 2000). Requirements (2)-(4) are not met.

6        **a.**      **Miramax did not make a copyrightable contribution**

7        It is settled that "joint authorship requires each author to make an independently

8  copyrightable contribution[,]" *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir.

9  1990), and "[n]o author may copyright facts or ideas[,]" *Harper & Row, Publishers, Inc.*

10 *v. Nation Enterprises*, 471 U.S. 539, 547 (1985), and only original works of authorship

11 receive copyright protection. 17 U.S.C. § 102(a). Thus, an "independently copyrightable

12 contribution," is one that "represents original expression that could stand on its own as

13 the subject matter of copyright." *Ashton-Tate*, 916 F.2d at 521 (citations omitted).

14       Zahedi made all copyrightable contributions to the Zahedi Photograph. Miramax's

15 only witness with personal knowledge of the Zahedi photography shoot conceded "[w]e

16 created the concept though. We didn't create the photo." SUF 47. She also affirmed that

17 Miramax "provided the idea and Mr. Zahedi created the photograph." SUF 48. Zahedi

18 disputes Miramax provided even that. SUF 49.

19       But "ideas" are not protected by copyright and are instead as "free as air." *Taylor*

20 *v. Metro-Goldwyn-Mayer Studios*, 115 F. Supp. 156, 158 (S.D. Cal. 1953)(protecting an

21 "idea transcends the normal bounds of common law copyright[.]"), see also *Harper &*

22 *Row,* 471 U.S. at 547 (ideas not copyrightable). Miramax's putative contribution of

23 "ideas," such as those related to Thurman's pose, for example, are *not* copyrightable.

24 Even if Miramax supplied the Film's cast as the photography's subjects, were present at

25 the photoshoot, and proposed ideas, this contribution would not be a copyrightable

26 because the "[m]ere selection of the subject matter to be photographed does not create

27 joint authorship." *Foster v. Lee*, 93 F. Supp. 3d 223, 228 (S.D.N.Y. 2015)*.*

28       Miramax "did nothing more than describe the sort of" work that Zahedi then

created, which is insufficient. *S.O.S., Inc.* 886 F.2d at 1087. And a "person who merely describes to an author what the commissioned work should do or look like is not a joint author for purposes of the Copyright Act." *Id*. Miramax's contributions, to the extent there were any, simply do not constitute "original expression that could stand on its own as the subject matter of copyright." *Ashton-Tate*, 916 F.2d at 52.[6]

### b.    Miramax was not an author of the Zahedi Photograph

Even if Miramax had contributed copyrightable authorship to the Zahedi Photograph, merely "making a copyrightable contribution is not enough to establish joint authorship[.]" *Morrill,* 157 F. Supp. 2d at 1123, citing *Aalmuhammed*, 202 F.3d at 1232 ("authorship is not the same thing as making a valuable and copyrightable contribution"). Each contributor must also be deemed an "author" of the work. *Id*. To determine whether a contributor "authored" a work, in the absence of a contract, the court considers whether: (1) the purported author controls the work and is the inventive or master mind who creates, or gives effect to the idea, (2) the putative coauthors make objective manifestations of shared intent to be coauthors, and (3) the audience appeal of the work turns on both contributions and the share of each in its success cannot be appraised. *Aalmuhammed*, 202 F.3d at 1234 (internal citations and quotations omitted)*.* And "the authors must intend their contributions be merged into inseparable or interdependent parts of a unitary whole." *Id*. at 1231. All factors favor Zahedi.

### i.    Zahedi was the master mind that gave effect to the idea

Zahedi was the creator who "translated" the idea into a "fixed tangible expression" when creating the Zahedi Photograph. To "be an author, one must supply more than mere direction or ideas: one must 'translate [ ] an idea into a fixed, tangible expression entitled to copyright protection.'" *S.O.S., Inc.* 886 F.2d at 1087 (citation omitted). *Here,* Zahedi

---

[6] Even Miramax's addition of text to create the Poster is not copyrightable. See *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072–73 (2d Cir.1992) (short phrases not copyrightable); *Bell v. Blaze Magazine*, No. 99 Civ. 12342, 2001 WL 262718, at *2 (S.D.N.Y. 2001) ("short phrases, such as titles or slogans" not sufficiently creative).

captured the photograph with his equipment, including his camera and lens, in his private studio, and decided when to press the shutter, which captured the image. SUF 50. Miramax provided, at most, ideas and was not an author. SUF 51.

### ii.    There was no objective manifestation of a shared intent to be co-authors

Nothing in the record establishes that Zahedi and Miramax shared an intent to author the Zahedi Photograph as a joint work. As stated, Zahedi made all creative decisions in his own studio with his own equipment. SUF 52. He then provided the photograph to Miramax to incorporate into the Poster, a derivative work. SUF 53. Zahedi's general practice was to create his own photographs and not work with co-authors, and such was the case here. SUF 54. The only objective manifestations of the parties understanding are a Hollywood Reporter Award for Key Art (the "Award") and Miramax's copyright registration for the Poster. The Award credits only Zahedi as the photographer. SUF 55. And, Miramax, when filing its copyright registration for the Poster, claimed ownership of the two-dimensional graphics that it placed on top of the Zahedi Photograph, but did *not* claim ownership of the Zahedi Photograph itself and put the world on notice of same.[7] SUF 56.

Courts routinely find no "joint intent" on similar facts. See *Foster,* 93 F. Supp. 3d at 228 (rejecting argument when defendants were "present ... at the photo shoot"; "supplied the space where the photo shoot was conducted and retained the model who [sic [plaintiff] photographed"; and "collaborated with [defendant] to transform the photograph into [an] advertisement."). In such cases, despite certain levels of collaboration, there is "no evidence on which a reasonable juror could conclude that the parties intended to be joint authors of the photograph." *Id*. Such is true here.

### iii.    The audience appeal is not affected by Miramax's contributions

---

[7] Copyright registration certificate "put[s] the world on constructive notice" of the facts in the certificate, "including ownership of the copyright." *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc*., 232 F. Supp. 3d 384, 389–90 (S.D.N.Y. 2017), aff'd, 738 F. App'x 722 (2d Cir. 2018)(citations omitted).

1    Miramax II cannot point to a single copyrightable – or even visible – element that
2    Miramax contributed to the Zahedi Photograph. The audience appeal of the work thus
3    turns on Zahedi's creative content and Miramax can provide no evidence to the contrary.

4          iv.     **There was no intent to merge contributions into a final work**

5          The Zahedi Photograph was not a joint work because Zahedi was the only
6    contributor and there was never any "intent" to merge contributions. Indeed, Miramax's
7    contributions were never fixed in any media and were thus incapable of merger. The
8    Ninth Circuit, in *Garcia v. Google, Inc*., "applied these standards in rejecting a joint
9    authorship claim made by an actress whose performance was included in a YouTube
10   video without her knowledge or consent." *Robertson v. Burdon*, No. EDCV1800397
11   JAKSHKX, 2019 WL 2141971, at *8 (C.D. Cal. 2019), citing *Garcia v. Google*, 786
12   F.3d 733, 737-38, 743-44 (9th Cir. 2015). The Court found that "[b]ecause the film's
13   director and crew, and not the actress, fixed her performance in a tangible medium, the
14   actress did not qualify as an author of the film even if her creative contributions were
15   sufficient under the *Aalmuhammed* test." *Id*., citing *id*. at 743-44. This is true here –
16   Zahedi fixed the Zahedi Photograph in a tangible medium and he alone authored same.

17         D.     **No "implied license" was granted**

18         Given Miramax's lack of a written transfer, it can claim only a non-exclusive
19   "implied" license. *Konigsberg Int'l, Inc.*, 16 F.3d at 356 (a "transfer of copyright is
20   simply not valid without a writing."). But Miramax II testified that there was *no* implied
21   license relating to the Zahedi Photograph or Poster. SUF 57. And Zahedi granted an
22   *express* limited license for a specific use, so no implied license could exist to vary its
23   terms by extending its scope to encompass unlimited and uncontemplated uses by third
24   parties that did not even exist at the time of negotiation, and which did not begin until
25   more than a decade after the Film's release. *Corbello v. DeVito*, 777 F.3d 1058, 1067 (9th
26   Cir. 2015)(focus is on "the licensor's objective intent **at the time of the creation and**
27   **delivery** of the software as manifested by the parties' conduct.")(citation omitted,
28   emphasis added). Focusing on the intent at time of delivery, an implied license exists

- 11 -

only when a licensee requests the creation of a work that the licensor creates and delivers, and the licensor intends that the licensee copy and distribute his work. *Asset Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748, 754-755 (9th Cir. 2008)(citation omitted). And an implied license only extends to the "specific purpose" that licensor knows or intends to permit. *SHL Imaging, Inc. v. Artisan House, Inc.,* 117 F.Supp.2d 301, 317 (S.D.N.Y. 2000).  Crucially, a license that allows a specific use cannot be extended to other uses unless the parties agree. *Oddo*, 743 F.2d at 632 ("implied license to use the articles in the manuscript does not [convey] the right to use the articles in any work other than the manuscript itself.").

And an "implied" license must be construed to "be consistent with the Copyright Act[,]" so "state law determines whether a copyright holder has granted [a nonexclusive] license [*so long as it does not conflict with the Copyright Act* ]." *Crispin,* 839 F. Supp. 2d at 1093. (emphasis by Court), citing *Foad Consulting Group, Inc. v. Azzalino*, 270 F.2d 821, 827 (9th Cir. 2001); see also *S.O.S., Inc.,* 886 F.2d at 1088 (state law applies "but *only to the extent such rules do not interfere with federal copyright law or policy*.") (emphasis by court). Miramax's implied license claim must accord with "federal copyright policy," under which all "copyright licenses are assumed to **prohibit** any use not authorized." *S.O.S., Inc.,* 886 F.2d at 1088 (emphasis added, citation omitted).

Thus, the question is whether there was a "meeting of the minds" between the parties to permit the "particular usage at issue[,]" and the evidence must show that "both parties to the transaction, not just the defendant, intended that the defendant could use or copy the plaintiff's work without liability for copyright infringement." *Bean v. Pearson Educ., Inc*., 949 F.Supp.2d 941, 947 (D. Ariz. 2013); quoting, *Psihoyos v. Pearson Educ. Inc.*, 855 F.Supp.2d 103, 124 (S.D.N.Y. 2012); *Viacom Intern. Inc. v. Fanzine Intern. Inc.*, No. 98 Civ. 7448, 2000 WL 1854903, at *3 (S.D.N.Y. July 12, 2000) ("As with all copyright licenses, an implied license protects the licensee only to the extent the copyright owners intended that their copyrighted works be used in the manner in which they were eventually used.")(remaining citation omitted).

1    Miramax II conceded that it was not aware of *any* license between Mr. Zahedi and

2    Miramax relating to the Film or his photography, failing to establish that there was a

3    "meeting of the minds" as to any uses aside from that publicizing the Film's release. SUF

4    57. And Lubell, who negotiated the Zahedi License, was unable to identify *any* specific

5    license terms that she negotiated with Zahedi or his agent. SUF 58.

6          As such, it cannot be shown that *both* parties agreed to any additional uses or

7    sublicensing or assignment rights. The express agreement of the parties was that

8    Miramax would only use the Zahedi Photograph for the "specific purpose" of creating a

9    Poster publicizing the film upon its release, and to use the work to publicize said release.

10   Miramax II cannot assert an "implied license" that conflicts with the express Zahedi

11   License or claim the right to exploit the Zahedi Photograph in ways that were not in

12   existence at the time of the license and as such could not have been contemplated during

13   negotiation because such a license allows only the "use a product for the purpose for

14   which the seller sold it to the buyer." *Foad*, 270 F.3d at 827. And an implied license

15   "cannot arise out of the unilateral expectations of one party[.]" *Jose Luis Pelaez, Inc. v.*

16   *McGraw-Hill Glob. Educ. Holdings LLC*, 399 F. Supp. 3d 120, 142 (S.D.N.Y.

17   2019)(citations omitted). Construing the putative implied license to prohibit any use not

18   expressly granted, Miramax was permitted only to exploit the Zahedi Photograph to

19   publicize the Film's release, primarily as the source art for the physical Poster.

20        **E.     The Poster is a derivative work and Miramax II's copyright ownership,**

21              **if any, extends only to Miramax's additions to the Zahedi Photograph**

22        Miramax II's ownership claims fail because it can claim copyright only in the

23   graphics, text, and slight alterations Miramax made to the Zahedi Photograph. Zahedi

24   licensed the Zahedi Photograph to Miramax for incorporation into the Poster, a derivative

25   work to be built on the Zahedi Photograph. 17 U.S.C. § 101 (a "derivative work" is a

26   work based upon "one or more preexisting works[.]"). As a copyright owner, Zahedi has

27   the exclusive right to "authorize others to prepare derivative works based on their

28   copyrighted works." *DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015)(citation

omitted). And when "a copyright owner authorizes a third party to prepare a derivative work," she "retains a copyright in that derivative work with respect to all of the elements that the derivative creator drew from the underlying work." Id. (citation omitted). And the third party's copyright protection in the derivative work will cover only "the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012), citing § 103(b); see *Stewart v. Abend*, 495 U.S. 207, 223, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) ("The aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work.") [8] Here, Zahedi authorized Miramax to create the Poster for use within the Zahedi License's scope and maintained his exclusive rights to authorize derivatives, reproduce, distribute, and publicly display the Zahedi Photograph. 17 U.S.C. § 106. And Miramax can claim ownership only of the 2-dimensional graphic artwork, text, and slight alterations that it added to the Zahedi Photograph.

Miramax II's exploitation of the Zahedi Photograph individually and as part of the Poster (and in any other versions) beyond the scope of the Zahedi License thus breached the Zahedi License and violated Zahedi's exclusive Section 106 rights. This was infringement because Miramax's copyright ownership extends *only* to the material it added to the Zahedi Photograph. *Bell v. Wilmott Storage Servs., LLC*, 2021 WL 4097499, at *4 (9th Cir. 2021) (infringement occurs when defendant violates one "of the exclusive rights in copyright set forth in 17 U.S.C. § 106.).

Miramax II's copyright ownership claim for the Poster is limited to, if anything, what Miramax added to the Zahedi Photograph and "is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright

---

[8] Miramax, as "the creator of the derivative work has a copyright only as to those original aspects of the work that the derivative creator contributed, and only to the extent the derivative creator's contributions are "more than trivial."" *DC Comics,* 802 F.3d at 1023.

1    protection" for said photograph. *Stewart v. Abend*, 495 U.S. 207, 224, (1990) citing, 17

2    U.S.C. § 103(b). Its ownership claims thus fail as a matter of law.

3         **F.    Miramax's Registration does not cover the Zahedi Photograph**

4         On October 17, 2003, Miramax obtained a Certificate of Registration (the

5    "Registration") from the Copyright Office for a "Key Art Transparency" entitled "Pulp

6    Fiction" and depicting the Poster. SUF 63. The Registration is a "VA" registration, for

7    "Visual Arts" and is expressly limited to the 2-dimensional graphic artwork that Miramax

8    added to the Zahedi Photograph when creating the Poster. SUF 64. Crucially, it *does not*

9    *identify or cover* the Zahedi Photograph. SUF 66.

10        The Compendium of U.S. Copyright Office Practices, Second Edition published in

11   (the "*Compendium II*") reflects the Copyright Office's general practices for registration,

12   recordation, and other matters arising under the Copyright Act of 1976, when Miramax

13   registered the Poster in October 2013. *Compendium II* requires applicants to identify the

14   scope of the creative material being registered, stating, "the nature of authorship defines

15   the scope of the registration: therefore, it represents an **important** copyright fact."

16   *Compendium II* §619(emphasis added). The nature-of-authorship claim must include a

17   "brief general statement of the nature of the author's contribution to the work. Id. at

18   §619.02. Miramax, in completing the nature-of-authorship section, did *not* claim the

19   photograph in the Poster to be within the scope of the Registration. Miramax, in

20   completing Section 2(a) of the Registration, expressly omitted the Zahedi Photograph.

21   Miramax represented in that Section, which "defines the scope of the registration," that it

22   was registering only a "2 dimensional artwork" and *not* the underlying "Photograph." Id.

23   at §619. Indeed, Miramax did not complete the box that would have identified Miramax

24   as the owner and author of the "Photograph," as seen in **Exhibit 20.**

25        This statement accords with all other evidence in this case, which establishes that

26   Miramax at no times authored, or owned the copyright to, the Zahedi Photograph and

27   instead contributed, at most, ideas to the Zahedi Photograph and slight alterations, text

28   and graphics (or "2 dimensional artwork) to the Zahedi Photograph when making the

- 15 -

1   Poster. Miramax never registered the Zahedi Photograph. SUF 68.

2          *Compendium II* also states that the "nature-of-authorship statement for a derivative

3   work [] should describe more specifically the kind of authorship on which the claim

4   being registered is based." *Compendium II* § 619.03(a). Here, Miramax failed to identify

5   the work as a derivative and identified only the "2 dimensional artwork" as being

6   registered. SUF 67. Because "the registration will cover only part of the material

7   contained in a derivative work, the nature of the author's contribution for such works

8   must be made clear." Id. at §619.10(a).[9] The "2 dimensional artwork" Miramax added to

9   the Zahedi Photograph is identified as the *only* creative material being registered.

10          Given the above, Miramax's Registration does not cover the Zahedi Photograph.

11   The Poster is a derivative work and therefore Miramax owned, and the Registration

12   covers, *only* the copyright for the 2 dimensional graphic material Miramax added to the

13   Zahedi Photograph.

14          **G.     Miramax II's Registration is invalid**

15          If Miramax II argues the Registration *does* cover the Zahedi Photograph, in

16   defiance of the document's text, then the Registration is invalid. A registration is invalid

17   if it includes knowing material inaccuracies. See 17 U.S.C. §411(b)(1). Here, if the Court

18   finds the Registration included the Zahedi Photograph, then Miramax registered a

19   photograph authored and owned by Zahedi without identifying him as an author *or* owner

20   (claimant). It also identifies the transparency as a "work-for-hire" when it is not and it

21   fails to identify the transparency as a derivative work when it is. These inaccuracies

22   invalidate the Registration and Zahedi respectfully requests the court contact the

23   "Register of Copyrights to advise the court whether the inaccurate information, if known,

24   would have caused the Register of Copyrights to refuse registration." 17 U.S.C. §

25   _____

26   [9]  The copyright in a derivative work like the Poster extends only to the material
    contributed by the author of such work, "as distinguished from the preexisting material

27   employed in the work, and does not imply any exclusive right in the preexisting

28   material." *Stewart,* 495 U.S. at 224, citing 17 U.S.C. § 103(b).

1   411(b)(2).[10]

2       Zahedi created the Zahedi Photograph, which is the primary visual element for the

3   Poster. Yet, he is not identified as an "author" of the copyrightable material comprising

4   the Poster (as required in Section 2) and is omitted as an owner or "claimant" of said

5   material (as required in Section 4). Similarly, in Section 4, Miramax falsely stated that

6   the Poster was a work-for-hire despite knowing that Zahedi was not an employee and did

7   not sign a work-for-hire contract. Finally, The Registration fails to provide *any* of the

8   required information for a derivative work or identify the Poster as a derivative work.

9   Section 6a of the Registration does not identify the Zahedi Photograph as "preexisting

10  material," despite the fact the Zahedi Photograph was distributed to it by Zahedi before

11  the creation of the Poster. *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.,* 959 F.3d

12  1194, 1198 (2020) ("publication" is the initial "distribution" of a work), quoting 17

13  U.S.C. 101. Further, in Section 6b of the Registration, Miramax was required to describe

14  the new copyrightable material added to the preexisting work per *Compendium II* §

15  619.10. Miramax left this Section entirely blank. The Registration is invalid.

16      **H.    Miramax II owns no copyrights in the Zahedi Photograph, the Poster,**

17             **or any derivative**

18      Because Miramax, at most, "invalidly conveyed its interest" in the Zahedi

19  Photograph to Miramax II, the latter "did not acquire a valid license to distribute" said

20  work. *Sapiano v. Millenium Ent., LLC*, No. CV 12-8122 PSG (MAN), 2013 WL

21  12120262, at *10 (C.D. Cal. Nov. 14, 2013), citing *Gardner*, 279 F.3d at 781. Miramax,

22  at the time it negotiated the Zahedi License, was owned by The Walt Disney Company

23  ("Disney"). In 2010, Disney sold Miramax Film Corp. to Filmyard Holdings and

24  _____

25  [10] The statutory requirement to refer validity questions "is mandatory in nature,
    requiring district courts to solicit the advice of the Copyright Office when the

26  statutory conditions are satisfied." See *Palmer/Kane LLC v. Rosen Book Works LLC*,
    No. 15-CV-7406 (JSR), 2016 WL 3042895 at *1 (S.D.N.Y. 2016) (collecting cases).

27  Satisfaction occurs when the challenger presents evidence that the copyright registrant

28  knowingly included inaccurate information in an application. See *id*. at *2.

1    Miramax Film Corp. ceased doing business. SUF 71. Thereafter, in 2011, Miramax II

2    was formed and now exploits the intellectual property relating to the Film, including the

3    Zahedi Photograph and Poster. SUF 31, 32. But, Miramax, as a licensee, had *no* legal

4    right to transfer the Zahedi Photograph copyright to Miramax II. SUF 41.

5          The Copyright Act "does not allow a copyright licensee to transfer its rights under

6    an exclusive license, without the consent of the original licensor." *Gardner v. Nike, Inc.,*

7    279 F.3d 774, 780 (2002); see also 17 U.S.C. § 202(d)(2). In *Gardner*, the "Ninth Circuit

8    thoughtfully and extensively analyzed Sections 101 and 201(d) of the Copyright Right to

9    hold that a licensee may not transfer its rights to a copyright without consent of the

10   original licensor. *Sapiano,* 2013 WL 12120262 at *7, citing *Gardner*, 279 F.3d at 778-81.

11         Miramax's license was thus non-transferable unless Miramax discharged its

12   "burden of obtaining the licensor's consent before [assigning] its rights, absent explicit

13   contractual language to the contrary." *Gardner,* 279 F.3d at 781. Here, no "explicit"

14   contractual language exists and Miramax did not gain Zahedi's consent, so the transfer

15   fails. Miramax II may argue that Miramax "could freely transfer these rights because

16   there were no contractual restrictions requiring [Miramax's] consent[,]" but this argument

17   fails because the onus is on the licensee to obtain consent. *Gardner,* 279 F.3d at 779. Nor

18   can Miramax II argue that there was no transfer due to the type of corporate form or

19   transaction that occurred. *SQL Sols., Inc,* 1991 WL 626458, at *6 (the "court finds that an

20   illegitimate transfer of copyright license rights occurred when D & N became SQL").

21   Miramax II, a distinct business entity from Miramax, enjoys no rights in the Zahedi

22   Photograph or any derivatives thereof.[11] Miramax II never obtained *any* relevant rights.

23         But even if Miramax could have lawfully transferred whatever copyrights it held to

24

25   _____

26   [11] "California courts have consistently recognized that an assignment or transfer of rights
     *does* occur through a change in the legal form of ownership of a business. *SQL Sols., Inc.*

27   *v. Oracle Corp*., No. C-91-1079 MHP, 1991 WL 626458, at *3 (N.D. Cal. Dec. 1991),
     citing *Trubowitch v. Riverbank Canning Co*., 30 Cal.2d 335, 344–45 (1947)(emphasis in

28   original; remaining citation omitted).

the Zahedi Photograph, Miramax II failed to establish a proper chain-of-title. Miramax II cannot produce any "chain-of-title" documents – invalid or otherwise – to carry its burden of establishing how, when, or from whom it obtained any copyrights in the Zahedi Photograph or Poster. Failing to carry this burden dooms its ownership claims. *Fleischer Studios, Inc. v. A.V.E.L.A., Inc*., 654 F.3d 958, 965 (9th Cir. 2011)("the chain of title is broken […], the district court properly dismissed [the] copyright-infringement claim.")

## I.    Miramax II did not own the right to sublicense

Miramax II also impermissibly sublicensed the rights it obtained under the Zahedi License to numerous companies, including clothing companies that produced and sold merchandise bearing the Zahedi Photograph. *Sapiano,* 2013 WL 12120262, at \*7 ("there is no longer any confusion among federal courts in the Ninth Circuit—a licensee may not sublicense its interest in a copyright without the licensor's consent.").[12] SUF 73. Miramax II entered into these sublicenses without "explicit" contractual language or Zahedi's consent, which was required. Because Miramax II never owned the right to sublicense, each of Miramax II's sublicensees' distributions of products or material incorporating the Zahedi Photograph was infringement.

## J.    Miramax II's defenses and counterclaims violate Section 204 and fail

Miramax II lacks standing to assert counterclaims for joint authorship or defenses relating to ownership or license aside from an implied license. Ownership has long been recognized "as a necessary predicate for standing to bring [a] claim[.]" *DRK Photo v.*

---

[12] Miramax bore the burden of obtaining Zahedi's "express consent to the sub-license either during or after contract negotiations." *L.A. Printex Indus., Inc. v. G&G Multitex, Inc*., No. CV 09-3812 ODW (RZX), 2010 WL 11520186, at \*4 (C.D.CA 2010), citing *Gardner*, 279 F.3d at 781. Notably, "[p]lacing the burden on the licensee assures that the licensor will be able to monitor the use of the copyright." Id. And the "consent necessary to properly effectuate a sub-license must be express or explicit, however, not loosely implied from the circumstances". Id., citing *Miller v. Glenn Miller Productions, Inc*., 454 F.3d 975, 988 (9th Cir. 2006)(express permission required) (citations omitted).

*McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 986 (9th Cir. 2017)(discussing infringement claims) citing 17 U.S.C. § 501(b). Here, Miramax, and not Miramax II, held the relevant rights, though Miramax did not have the legal ability to transfer those rights. And, even if it did, Miramax II, lacking a chain-of-title, would still lack standing. *Fleischer Studios, Inc.,* 654 F.3d at 965 (dismissing copyright claim).

Even if Miramax II had obtained copyrights from Miramax, and could prove its chain-of-title, its arguments relating to a transfer of Zahedi's copyrights *still* must rejected because the "absence of a written transfer agreement" with Zahedi defeats Miramax's "standing to pursue" ownership claims. *Yellowcake,* 2021 WL 3052535, at *5, citing *Radio TV Espanola*, 183 F.3d at 926-27 (remaining citations omitted). The "provisions of Section 204(a) appears to do more than transfer a general statute of frauds to copyright. Instead, they provide the requirements for the very validity of a given transfer." *Pamfiloff v. Giant Recs., Inc*., 794 F. Supp. 933, 937 (N.D.CA 1992). Courts "interpret Section 204(a) to provide protection for the author and creator of copyrighted material against fraudulent claims of transfer [and the] policy underlying Section 204(a) [is] tipped somewhat in favor of the original holder of the copyrighted material." *Id*. Thus, Section 204 precludes Miramax II's arguments. See *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 774 (9th Cir. 1989) ("Section 204(a) not only bars copyright infringement actions but also breach of oral contract claims."). Miramax II's ownership-related claims and defenses fail, as does its statute-of-limitations defense, as follows.

### 1.    Zahedi filed this case within the statute of limitations

Zahedi filed this case within a year of discovering Miramax II's infringement, well within the statute of limitations. Generally, copyright infringement actions must be filed "within three years after the claim accrued." *Roley v. New World Pictures, Ltd*., 19 F.3d 479, 481 (9th Cir. 1994), quoting 17 U.S.C. § 507(b); see also *Petrella v. Metro-Goldwyn-Mayer, Inc*., 572 U.S. 663, 671 (2014). But a copyright infringement claim "accrues when one has knowledge of a violation or is chargeable with such knowledge." *Roley*, 19 F.3d at 481. And one is chargeable with knowledge of a copyright violation if it

could have been reasonably discovered. *Polar Bear Prods. v. Timex Corp*., 384 F.3d 700, 706 (9th Cir. 2004). Thus, a "plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the" claim. *Pincay v. Andrews*, 238 F.3d 1106, 1109–10 (9th Cir. 2001) (internal quotation marks and citation omitted).

Under the "discovery rule," "the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances." *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC,* No. CV 20-4085-DMG (KSX), 2021 WL 566500 at 6* (C.D. Cal. 2021)(appeal pending), quoting *Polar Bear,* 384 F.3d at 706.

And this general rule is supplemented by the widely-recognized "separate-accrual" rule, under which "when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs. In short, each infringing act starts a new limitations period." *Starz Ent., LLC*, 2021 WL 566500 at 6*, quoting *Petrella*, 572 U.S. at 671.  Here, each product or publication distributed, or sublicense executed, that incorporated or involved the Zahedi Photograph was a separate breach, perpetrated by the party distributing, reproducing, or sublicense the item. *Stone v. Williams*, 970 F.2d 1043, 1049 (C.A.2 1992) ("Each act of infringement is a distinct harm giving rise to an independent claim for relief.").

Zahedi first discovered an infringing use of a version of the Zahedi Photograph on product and outside the context of the Poster in 2019 when he was gifted socks containing a reproduction of the photograph. Upon receipt of these socks, Zahedi contacted counsel, after which they discovered both the Zahedi Photograph and Poster used on numerous products. Zahedi then unsuccessfully attempted to resolve the dispute with Miramax II and thereafter filed the case on May 19, 2020. This filing within one

year of discovery was well within the statute of limitations.

So owing, aside from the ReAction toys, discussed, *infra*, Zahedi may recover all infringing revenues generated from infringing distributions and sales, not just those from the three-year period before the complaint filing. It is settled that, "the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances." *Polar Bear Productions, Inc.,* 384 F.3d at 706. Where, as here, a plaintiff does not and reasonably could not have discovered the infringement at issue before the commencement of the three-year limitations period, damages are permitted outside the three-year window. Id. Miramax II did not itself manufacture and distribute merchandise but, beginning in 2012, entered into numerous sublicenses with third parties to do so. Zahedi could not have reasonably discovered all such infringement, especially given that Miramax II failed to gain Zahedi's consent for the sublicenses, as required. Zahedi discovered Miramax II's unlawful use of the Zahedi Photograph on merchandise in late 2019, tried unsuccessfully to resolve it, and then filed the case on May 19, 2020, well within the three-year statute.

### 2. Zahedi's lack of knowledge of Miramax's infringement was reasonable and any damages limitation would apply only to the ReAction toys

Zahedi's 2019 discovery of the infringement was reasonable given the large number of sublicensees, target market for the product at issue, and lack of notice to Zahedi. Miramax II's representatives and witnesses were also unable to identify a single specific instance of seeing infringing products sold in a retail setting or identify what specific retailers sold the products. SUF 82. Zahedi similarly testified that he did not see the products sold and was only made aware of the product by a gift. SUF 83. And Botaish likewise testified she had not seen the work used or alerted Zahedi that Miramax or Miramax II was using the work outside of the Zahedi License he granted in 1994. SUF 84. There is no evidence that Zahedi ever visited any of the stores that supposedly sold any Film merchandise. He did not visit the physical and online stores of large retailers.

1  SUF 85. His 2019 discovery was reasonable.

2      Miramax II may allege otherwise because Zahedi saw one instance of the Poster

3  being used on *packaging* for a toy in 2015. However, as Miramax II avers in its Answer

4  and Counterclaim, there are at two photographs at issue in this case, and it is the

5  derivative Poster image on the packaging. In 2015, a relative of Zahedi showed him a

6  "ReAction Figures" Uma Thurman toy, whose *packaging* incorporated the *Poster*. SUF

7  78. At the time he became aware of this toy's packaging he did not see the Poster or the

8  Zahedi Photograph being used on actual product or in any other ways,[13] and he was

9  experiencing health issues, so he concluded that the claims related to the toy doll

10  packaging were not "worth the candle," as was his right. SUF 79.[14] And this product was

11  likely unauthorized in any event, as Miramax II produced no license for ReAction toys.

12  SUF 80. Thereafter, in 2019, Zahedi first saw the Zahedi Photograph itself used on

13  merchandise, namely a pair of socks, and promptly filed this lawsuit. SUF 81.

14      Zahedi's awareness in 2015 of a company named ReAction marketing a Thurman

15  toy using the Poster on its packaging *does* limit his damages window, but *only* as to those

16  items, to three-years before the filing of the case. Only ReAction "reproduced or

17  distributed" the infringing toy packaging and thus Zahedi was only chargeable with

18  knowledge of his discrete claims against ReAction for those items, and not any other

19  claims against the other Defendants. *Starz Ent., LLC*, 2021 WL 566500 at 6*.

20      Given that a claim ordinarily accrues "when [a] plaintiff has a complete and

21

22  [13] Even when a photographer is aware of some copying of their work, there is no
   obligation to scour the internet to find additional infringement. See, *Fioranelli v. CBS*
23  *Broad. Inc.*, No. 15-CV-0952 (VSB), 2021 WL 3372695, at *36 (S.D.N.Y.  2021), citing,
   *Masi v. Moguldom Media Grp. LLC*, No. 18 CIV. 2402 (PAC), 2019 WL 3287819, at *5
24  (S.D.N.Y. 2019) (no "duty for [artist] to scour the internet to find out if, anyone was
   using his photographs without his consent")
25
26  [14] Zahedi acknowledges that he may be limited to the "three-year lookback period" for
   the toy claims from 2015. See *Petrella* 572 U.S. at 682–83, (Section 507(b)'s three-year
27  limitations period "allows a copyright owner to defer suit until she can estimate whether
28  litigation is worth the candle.")

- 23 -

present cause of action[,]" Zahedi's claims against the other Defendants did not accrue until 2019.  *Petrella*, 572 U.S. at 670, citing *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) (internal quotation marks omitted). Indeed, "the limitations period generally begins to run at the point when "the plaintiff can file suit and obtain relief." Id. Clearly, Zahedi could not have filed suit against any Defendants other than ReAction in 2015, because he was either unaware of their infringement or they had not yet commenced infringement.

Thus, if Zahedi is chargeable with knowledge of a discrete infringement in 2015, when he saw the Poster on the ReAction toy packaging, the statute would be triggered **only** as to any claims regarding said toys. A "direct infringement claim turn[s] on '*who made*' the copies[.]" *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1053 (9th Cir. 2020)(citations omitted; emphasis in original). Here, ReAction and not Miramx, Miramax II (or any other Defendant) appears to have made the toys and infringing packaging. So owing, only ReAction's conduct "can reasonably be described as the *direct cause* of the infringement." *Oracle* 971 F.3d at 1053 (citations omitted) (emphasis in original). Zahedi can thus only be charged with knowledge of his infringement claim relating to the Thurman dolls in 2015.. And Zahedi cannot be chargeable with knowledge of the other infringing products or sales by other Defendants as of that date, as each was subject to different licenses with different dates and were sold through different streams of commerce.

### 3.    Zahedi is entitled to the three-year lookback period for damages

At a minimum, given Miramax II's and the other Defendants' ongoing infringement, Zahedi is entitled, as a matter of law, to seek damages in the three-year lookback window. Miramax II licensed the Film assets, inclusive of the Zahedi Photograph, on numerous occasions over the past three-to-five years and as recently as April 27, 2020, and numerous third parties have reproduced and distributed infringing items. SUF 86. "'[I]n a case of continuing copyright infringements, an action may be

1    brought for all acts that accrued within the three years preceding the filing of suit.'" *Polar*
2    *Bear Productions, Inc.,* 384 F.3d at 706; citing *Roley,* 19 F.3d at 481. Therefore, even if
3    the Court holds that Zahedi knew or should have known of all Defendants' infringement
4    prior to May 19, 2017, he is still entitled to damages for all Defendants' infringing
5    distributions, reproductions, license, sales, and other acts that accrued between May 19,
6    2017 and the day of trial.

7    ## V.    SUMMARY ADJUDICATION IS PROPER

8         Zahedi respectfully requests that his motion be granted and Miramax II's claims of
9    ownership, authorship, and implied license of the Zahedi Photograph, as well as its
10   defenses, be rejected. It is respectfully requested that the Court adjudicate that Zahedi has
11   owned the copyright for the Zahedi Photograph since its creation and Miramax II owns,
12   at most, the copyrights for the additions that Miramax made to the Zahedi Photograph
13   when making the Poster. And that it be adjudicated that the statute of limitations does not
14   preclude or limit Zahedi's damages claims aside from the three-year window for the toy
15   damages, or, in the alternative and at a minimum, only limits Zahedi's damages to the
16   three-year window for all damages. Adjudicating this motion as sought will serve both
17   the interests of the Copyright Act in incentivizing creators to make art and affirming that
18   an artist's copyrights may not be divested in the absence of firm, clear, written consent.

19

20                                                          Respectfully submitted,

21

22   Dated: September 10, 2021           By:        */s/ Scott Alan Burroughs*
23                                                  Scott Alan Burroughs, Esq.
                                                    Frank R. Trechsel, Esq.
24                                                  DONIGER / BURROUGHS
                                                    Attorneys for Plaintiff
25                                                  Firooz Zahedi

26

27

28