1   Scott Alan Burroughs (SBN 235718)
    scott@donigerlawfirm.com
2   Trevor W. Barrett (SBN 287174)
    tbarrett@donigerlawfirm.com
3   Frank R. Trechsel (SBN 312199)
    ftrechsel@donigerlawfirm.com
4
    DONIGER / BURROUGHS
5   603 Rose Avenue
6   Venice, California 90291
    Telephone: (310) 590-1820
7   Attorneys for Plaintiff

8               UNITED STATES DISTRICT COURT
9               CENTRAL DISTRICT OF CALIFORNIA

10  FIROOZ ZAHEDI,                    Case *No.: 2:20-cv-04512-DMG-E*
                                      *Honorable Dolly M. Gee presiding*
11  Plaintiff,

12  v.                               **PLAINTIFF'S NOTICE OF**
                                     **MOTION AND MOTION FOR**
13  MIRAMAX, LLC; et al.,            **RECONSIDERATION AND**
                                     **CLARIFICATION OF ORDER**
14  Defendants.                      **GRANTING MIRAMAX, LLC'S**
                                     **MOTION FOR SUMMARY**
15                                   **JUDGMENT**
16
17
18                                   Date:        January 7, 2022
                                     Time:        9:30 a.m.
19                                   Courtroom:  8C

20  AND RELATED COUNTERCLAIMS
21
22
23
24
25
26
27
28

1   **<u>NOTICE OF MOTION AND MOTION FOR RECONSIDERATION</u>**

2   TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF

3   RECORD:

4   PLEASE TAKE NOTICE that on January 7, 2022 at 9:30 a.m., or as soon

5   thereafter as counsel may be heard, before the Honorable Dolly M. Gee Plaintiff will,

6   and hereby does, move this Honorable Court to reconsider and clarify its November

7   24, 2021 order denying Plaintiff, Firooz Zahedi's motion for summary judgment and

8   granting Defendant Miramax, LLC's motion for summary judgement (the "Order").

9   See Dkt. 188.

10   Plaintiff respectfully requests that the Court reconsider its conclusion that

11   Miramax, LLC expressly repudiated Zahedi's copyright ownership in the Zahedi

12   Photograph, as this conclusion appears to have been based on mistaken conclusions

13   of fact and law, most likely due in part to there being no oral argument on the

14   motions. This Court's Order also indicated that Zahedi and not Miramax owned the

15   copyright at issue, but did not clearly state that either Zahedi or Miramax, LLC owns

16   said copyright, which was the focus of this phase of the case. The Order appears to

17   state that Zahedi owns the copyright but that it can proceed with its claims only as to

18   the defendants other than Miramax, LLC.

19   Plaintiff makes this motion following the conference of counsel pursuant to

20   L.R. 7-3, which took place by phone on December 6, 2021. Miramax, LLC and

21   Target Corporation oppose the motion. This motion is based on this notice of motion

22   and supporting memorandum, the [proposed] order submitted concurrently, the

23   record in this case, and such other written or oral argument as may be presented at or

24   before this motion is taken under submission by the Court.

25

26   Respectfully submitted,

27   Dated: December 8, 2021          By:   */s/ Scott Alan Burroughs*

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Scott Alan Burroughs, Esq.
Trevor W. Barrett, Esq.
Frank R. Trechsel, Esq.
DONIGER / BURROUGHS
*Attorneys for Plaintiff*

## **<u>TABLE OF CONTENTS</u>**

I.    THE COURT SHOULD RECONSIDER ITS ORDER
      REGARDING THE STATUTE OF LIMITATION…………………….......1

      1.  The Toy was not an express repudiation………………………………..3

      2.  The parties were not in a close relationship……………………….....7

      3.  The Court did not consider certain arguments and evidence……........10

      4.  Miramax was unable to "change its position" on copyright
          ownership and Film Corp. never do so…………………………........10

      5.  Ownership is necessary to repudiate, and the Court erroneously
          addressed repudiation before establishing ownership…………….........11

II.   CLARIFICATION OF THE OWNERSHIP ISSUE IS
      NECESSARY…………………………………………………………....12

III.  CONCLUSION……………………………………………………………16

1

## <u>TABLE OF AUTHORITIES</u>

Page(s)

2

Cases

3

*Aalmuhammed v. Lee,*

4      202 F. 3d 1227 (9th Cir. 2000)...........................................................................4, 5, 7

5  *Advance Magazine Publishers, Inc. v. Leach,*
        466 F.Supp.2d 628 (D.Md.2006) .............................................................................14

6  *Am. Bullion, Inc. v. Regal Assets, LLC,*
        2014 WL 7404597 (C.D. Cal. Dec. 30, 2014) ..........................................................2

7
   *Anderson v. Stallone,*

8      11 U.S.P.Q.2d 1161, 1989 WL 206431 (C.D.Cal.1989)............................................4

9  *Ass'n of California Water Agencies Joint Powers Ins. Auth. v. Ins. Co. of the State of
        Pennsylvania,*

10      2013 WL 12131734 (C.D. Cal. Oct. 9, 2013) ..........................................................13

11 *Bloch v. Prudential Ins. Co. of Am.,*
        2005 WL 6141292 (C.D. Cal. Aug. 9, 2005) ............................................................3

12 *Brownstein v. Lindsay,*
        742 F.3d 55 (3rd Cir. 2014)......................................................................................14

13
   *Cunningham v. Seymour,*

14      2012 WL 12894699 (C.D. Cal. 2012) ......................................................................15

15 *Donen v. Paramount Pictures Corp.,*
        2008 WL 5054340 (C.D. Cal. Nov. 20, 2008) ..........................................................5

16 *Everly v. Everly,*
        958 F.3d 442 (6th Cir. 2020) ...................................................................................14

17
   *Fletcher Studios, Inc. v. A.V.E.L.A., Inc.,*

18      654 F.3d 958 (9th Cir. 2011) ...................................................................................12

19 *Gaiman v. McFarlane,*
        360 F.3d 644 (7th Cir. 2004) ...................................................................................14

20
   *Gardner v. Nike, Inc.,*

21      279 F, 774 (9th Cir. 2002)........................................................................................16

22 *Jules Jordan Video, Inv. v. 144942 Canada, Inc.,*
        617 F.3d 1146 (9th Cir. 2010)..................................................................................15

23 *McMunigal v. Bloch,* No. C 10-02765 SI,
        *2010* WL 5399219, at *6 (N.D. Cal. Dec. 23, 2010) .............................................14

24
   *Montwillo v. Tull,*

25      632 F. Supp. 2d 917 (N.D. Cal. 2008) ......................................................................4

26 *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation,*
        331 F.3d 1041 (9th Cir. 2003)....................................................................................2

27

28

*Padgett v. Loventhal*,
  2015 WL 13753300 (N.D. Cal. May 13, 2015) .......................................................13
*Pak's Trading Eur. B.V. v. Target*,
  2018 WL 8333362 (C.D. Cal. July 5, 2018) ...........................................................7
*Pegasus Satellite Television, Inc. v. DirecTV, Inc.*,
  318 F.Supp.2d 968 (C.D. Cal. 2004) ......................................................................2
*Perfect 10, Inc. v. CWIE, LLC*,
  2005 WL 5957973 (C.D. Cal. Feb. 10, 2005) .........................................................2
*Robertson v. Burdon*,
  2019 WL 2141971 (C.D. Cal. Apr. 3, 2019)............................................................5
*Santa-Rosa v. Combo*,
  471 F.3d 224 (1st Cir. 2006) .............................................................................6, 14
*Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*,
  5 F.3d 1255 (9th Cir. 1993) ...............................................................................2, 7
*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
  733 F.3d 1251 (9th Cir. 2013) ..................................................................... Passim
*Wahl v. Am. Sec. Ins. Co.*,
  2010 WL 2867130 (N.D. Cal. July 20, 2010) .........................................................13
*Welles v. Turner Ent. Co.*,
  503 F.3d 728 (9th Cir. 2007) ...............................................................................7
*White v. Warner-Tamerlane Publ'g Corp.*,
  2017 WL 4685542, (C.D. Cal. May 22, 2017)...................................................... Passim
*Zuill v. Shanahan*,
  80 F.3d 1366 (9th Cir. 1996).............................................................................7, 14

Statutes

17 U.S.C. 201(e) ................................................................................................14
17 U.S.C. § 101 ..................................................................................................15

Rules

California Central District Local Rule 7-18.................................................................2
Fed. R. Civ. Proc. 58...............................................................................................2
Fed. R. Civ. Proc. 59 ..............................................................................................2
Fed. R. Civ. P. 60(a)..............................................................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     THE COURT SHOULD RECONSIDER ITS ORDER
REGARDING THE STATUTE OF LIMITATIONS**

On November 24, 2021 this Court granted Defendant Miramax, LLC's ("Miramax") motion for summary judgment (Dkt. 145) and denied Plaintiff Firooz Zahedi's ("Zahedi") cross-motion for summary judgment (Dkt. 146), finding that Zahedi's claims are barred by the statute of limitations. See Dkt. 188. The Court concluded Miramax repudiated Zahedi's ownership claim because "Zahedi's receipt in 2015 of an action figure prominently featuring the iconic photo, bearing Miramax's copyright notice, and failing to credit Zahedi is uncontroverted evidence of his actual knowledge of Miramax's plain and express repudiation of his ownership." Dkt. 188, pg. 17:4-7. But that conclusion seemingly contradicts the Court's finding that Miramax's copyright registration of the Poster was not a plain and express repudiation of Zahedi's interest in his photograph because the registration could reasonably be seen as only claiming rights in the derivative Poster. Given that the Mia Wallace character, the action figure, and the Poster are each, at least arguably, independently entitled to copyright protection, the copyright notice on that product is even further from an express repudiation than was the copyright registration of the Poster by Miramax. Reconsideration is thus warranted.

Reconsideration is further warranted in this case because, as the Order recognizes, Miramax's statute of limitations defense also requires a finding that "the parties are in a close relationship" Dkt. 188pg. 13:3-5, citing *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1256-1257 (9th Cir. 2013). In this case, the uncontroverted evidence is that Zahedi had *no* relationship with Miramax. While Zahedi may have had a relationship with Miramax Film Corp. ("Film Corp."), there is no evidence Film Corp. ever repudiated Zahedi's ownership of the Zahedi Photographs. On the contrary, it at all times reaffirmed that ownership.

Reconsideration is also warranted because the Court made a factual error in concluding that Miramax "changed its position" regarding Zahedi's ownership of the Zahedi Photograph's copyright. Film Corp. at all times – on the Pulp Fiction book, the Key Art Award, and in completing the copyright registration for the Poster transparency – affirmed Zahedi's ownership. That Miramax, a company whose only connection to Film Corp. is that it bought certain of its assets through a "series of transactions," took a different position later and claimed ownership is of no import, particularly because Miramax, LLC, as a matter of law, is precluded from claiming ownership.[1]

This Court has wide latitude to grant reconsideration on grounds it deems appropriate, whether under the Federal Rules of Civil Procedure, this judicial district's Local Rules, or otherwise. *See, e.g.*, *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation,* 331 F.3d 1041, 1046 (9th Cir. 2003); *See also,* Fed. R. Civ. Proc. §§ 58 and 59.  Reconsideration is appropriate to address what appear to be "clear errors" and indicia of manifest injustice in the initial Order. *See, e.g.*, *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262–63 (9th Cir. 1993); *see also* California Central District Local Rule 7-18 (grounds for reconsideration). Reconsideration is also appropriate where a court does not "fully address" an issue presented. *See Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F.Supp.2d 968, 979 (C.D. Cal. 2004); see also *Am. Bullion, Inc. v. Regal Assets, LLC*, No. CV 14-01873 DDP, 2014 WL 7404597, at *1–2 (C.D. Cal. Dec. 30, 2014) (granting motion for reconsideration "in the interest of a full and fair discussion of the issues" because the court did not provide the reasoning supporting its conclusion as to a theory presented); *Perfect 10, Inc. v. CWIE, LLC*, No. CV 02-7624 LGB SHX,

---

[1] Miramax recently sued Quentin Tarantino because Tarantino, like Zahedi, claimed ownership of certain Pulp Fiction-related copyrights. In Miramax's complaint it concedes that its relationship to Miramax Film Corp. was that it purchased certain of its assets through a "series of transactions." See **Exhibit 1, pg. 4, ln. 28.**

2005 WL 5957973, at *1 (C.D. Cal. Feb. 10, 2005) ("[T]he court did not fully address its analysis . . . and, on that basis, the court shall reconsider."); *Bloch v. Prudential Ins. Co. of Am.*, No. CV05-1589-DT(MCX), 2005 WL 6141292, at *2–4 (C.D. Cal. Aug. 9, 2005) (reconsidering "Order [that] provide[d] no rationale as to" a claim presented). Reconsideration is warranted to address the above issues, as well as other arguments made by Zahedi that were not addressed or credited by the Court.

### 1. The Toy was not an express repudiation

It is respectfully submitted that because, in part, there was no oral argument on the motions, this Court erred in finding that a copyright notice on the packaging of a *Pulp Fiction* action figure (the "Toy") sold by a third party constituted express repudiation of Zahedi's ownership of his photograph. This was error because it was entirely unclear whether the copyright notice on the Toy's packaging related to the *Pulp Fiction* film, Mia Wallace character, the action figure, the text on the packaging, or the image of the Poster on the packaging. Indeed, the Toy likely had a Miramax copyright notice because it was a copyrightable representation of a character from a Miramax movie. This notice could plausibly be understood to claim ownership of elements other than the Zahedi Photograph or a license and as such could not have "plainly and expressly repudiated" Zahedi's ownership of his work.

The Court correctly acknowledged that the Miramax copyright registration was insufficient for repudiation because it "could plausibly be understood to cover only the poster, and not the underlying photograph." Dkt. 188 pg. 16:6-7. Given that finding, the copyright notice on the Toy must also be found insufficient for express repudiation because it too "could plausibly be understood to cover only the poster [or the character, or the action figure], and not the underlying photograph." Dkt. 188 pg. 16:6-7. Because the copyright notice on the Toy, like the copyright registration, is not specific to the Zahedi Photograph, the Court erred in concluding that it established

"plain and express repudiation" of Zahedi's copyright ownership in the Zahedi Photograph. *Aalmuhammed v. Lee*, 202 F. 3d 1227, 1230–31 (9th Cir. 2000).

Furthermore, action figures and dolls are copyrightable as are film characters. *See, e.g., Montwillo v. Tull*, 632 F. Supp. 2d 917, 924 (N.D. Cal. 2008)(plaintiff's dolls and doll designs are sufficiently original to warrant copyright protection.), *Anderson v. Stallone*, 11 U.S.P.Q.2d 1161, 1989 WL 206431, *6 (C.D.Cal.1989) (holding that Rocky characters "constitute expression protected by copyright independent from the story in which they are contained.") The Toy embodies a character from *Pulp Fiction* and was sold in packaging containing an image of the Poster. Dkt. 162-6. As such, the copyright notice[2] on the Toy simply cannot be read as to claim ownership of the specific Zahedi Photograph as is required for repudiation.

The Court also erred in making a misstatement of the record in its analysis regarding repudiation when it stated the Toy's packaging prominently featured the "iconic photo." Dkt. 188, pg. 17:4-5. The Toy only features the derivative Poster and *not* the Zahedi Photograph alone. The notice thus could apply to the elements of the Poster that Miramax may own, which do not include the Zahedi Photograph. This misstatement of fact is crucial because without a connection to the Zahedi Photograph, the Toy cannot serve as express repudiation of Zahedi's ownership of said photograph. To the contrary, the 2015 Toy provided no more notice that Miramax was claiming copyright ownership in the Zahedi Photograph than could the copyright registration for the Poster.

The Court also erred in its repudiation analysis when it concluded the lack of credit and royalties to be evidence of repudiation. Dkt. 188, pg. 17:5-7. There is no

---

[2] The same copyright notice found on the Action Figure's packaging also appears on other *Pulp Fiction* brand toys that do not contain either the Zahedi Photograph or the derivative Poster. See Dkt. 162-27. The Court's Order does not credit or address this fact either in making its determination.

evidence Zahedi expected credit or royalties on such a product, and the Court failed to address or credit this aspect of Zahedi argument. "[W]here copyright ownership in a work is disputed, the release of the work without crediting one of the disputed authors may not *per se* establish express repudiation. *Robertson v. Burdon*, No. EDCV1800397JAKSHKX, 2019 WL 2141971, at *13 (C.D. Cal. Apr. 3, 2019), citing *Donen v. Paramount Pictures Corp*., 2008 WL 5054340, at *5 (C.D. Cal. Nov. 20, 2008) (rejecting argument that release of motion picture without reference to plaintiff in credits constituted express repudiation).

Zahedi argues in his Reply to Miramax's Opposition that credit would not normally be found on the packaging of a toy. See Dkt. 177 pg. 20:1-11. A toy is distinct from an award or book where credit is often attributed to the individual contributors, and where Film Corp. did acknowledge Zahedi's authorship and ownership. Dkt. 171-1, 171-2. The Order cites *Aalmuhammed v. Lee,* for the proposition that *movie* credits "plainly and expressly repudiated authorship" by listing the plaintiff "far below the more prominent names." Dkt. 188 pg. 15:1-3, citing 202 F.3d 1227, 1231 (9th Cir. 2000). However, unlike a movie which as a matter of course displays credits for its contributors, a toy *never* credits the contributors. Neither the Court not Miramax cited a case where a lack of credit when the plaintiff would not have anticipated to be credited was sufficient alone or in combination with other factors to support a finding of repudiation.

The Court also appears to have been persuaded by Zahedi's lack of receipt of royalties for the Toy despite a lack of royalties being entirely consistent with the breach of a license, which is unrelated to ownership. The Order states "Zahedi actually knew that Miramax was exploiting a photograph of which he claimed ownership without giving him credit or royalties, his failure to bring suit to assert his ownership rights is fatal to his case." Dkt. 188 pg. 16:18-20. The Court then cited *White* to support its position, but *White* makes no mention or discussion of royalties.

*White v. Warner-Tamerlane Publ'g Corp.,* No. CV 16-5831-PSG (JEMx), 2017 WL 4685542 at *1, (C.D. Cal. May 22, 2017), *aff'd sub nom. White v. Broadus,* 748 F. App'x 131 (9th Cir. 2019). The only other case cited by the Court that discusses royalties is *Santa-Rosa* but that case is distinguishable because it involved a claim of co-ownership, and the plaintiff had an expectation to receive royalties from the onset of his relationship with defendants. *Santa-Rosa v. Combo Recs.,* 471 F.3d 224, 228 (1st Cir. 2006) (Santa Rosa was present when his performances were recorded by Combo Records, and thus knew from the moment that each recording was created that he had a potential claim for ownership.)

However, here Zahedi has presented evidence he was paid for the Zahedi Photograph in return for a limited license for Film Corp. to use the Zahedi Photograph. There was no agreement for him to receive royalties, and unlike in the co-ownership relationship no right to royalties for a co-owners exploitation of the work.[3] If Zahedi had no expectation to receive any further payments from Miramax for the use of his photograph, the fact he didn't receive any upon learning of the Toy would not put him on notice that Miramax was claiming *ownership* in the Zahedi Photograph, but simply that they violated his license.

And even if Zahedi knew "that the defendants were distributing" the infringing merchandise, that "is not the plain and express repudiation of copyright ownership that our case law requires for the statute of limitations on a copyright ownership claim to begin running." *Welles v. Turner Ent. Co.,* 503 F.3d 728, 734 (9th Cir. 2007), citing *Zuill,* 80 F.3d at 1369. The Order itself makes clear that the Toy cannot

---

[3] The Court noted, Zahedi's step-son's Instagram post's quote stating, "Turns out he didn't get toy royalties for his famous photo of Uma" as evidence that Zahedi was "aware of the use of his photograph on the toy and that he – or at least, his stepson – believed Zahedi should be receiving royalties for its use." Dkt. 188 pgs. 5-6 fn. 6. However, this conclusion is in error. First, it shows nothing about Zahedi's own belief regarding if he should receive royalties. Second, the statement affirms Zahedi's position that he had not agreed to and did not expect these types of royalties.

stand for a "clear and express repudiation of ownership," as is required to trigger the statute of limitations. Instead, the Order simply states: "it is clear that Zahedi understood in 2015 that Miramax claimed more rights in the photograph than Zahedi believed it had." Dkt. 188 pg. 17:11-12. But, "claiming more rights" does not amount to an express claim of ownership and repudiation. And, of course, this is entirely consistent with a breach of the license Zahedi granted to Film Corp. Miramax's claim of "more rights" is not equivalent to the "clear and express" claim of ownership and repudiation of his own ownership that is required. Yet, the Court incorrectly concluded this is tantamount to repudiation. This was error.

### 2.    The parties were not in a close relationship

In addition to express repudiation, Miramax was required to prove a "close relationship" between it and Zahedi. Dkt. 188 pg. 13:4, see also *Aalmuhammed*, 202 F. 3d at 1230–31. The Ninth Circuit has held that the repudiation rule applies only to parties who "are in a close relationship," which can include alleged co-owners or co-authors, parties given copyright ownership via contract, and a third-party licensee given exclusive rights. Id. at 1256–58 ("Extending [the] accrual rule to encompass claims against those who are not in a close relationship could introduce uncertainty into the enforcement of copyrights and require copyright holders to file suit against any third party that might be deemed to have repudiated the copyright owner's title.").

Here, Miramax had *no* relationship with Zahedi, let alone a close one. Indeed, Zahedi, and Miramax "are not co-owners, were not involved in creation of the marks together, and were never in privity" and as such were not "in a close relationship" as required to allow repudiation, *Pak's Trading Eur. B.V. v. Target*, No. SACV180536DOCDFMX, 2018 WL 8333362, at *6 (C.D. Cal. July 5, 2018), *citing Seven Arts Filmed Entertainment Ltd.*, 733 F.3d at 1258 (remaining citations omitted). While Zahedi entered into a license with Film Corp., Miramax's only

connection to that party is that it bought its assets through a "series of transactions." There was simply no "close relationship."

The Order states that in *Seven Arts* the plaintiff "knew about Paramount's interest in, and exploitation of, the rights in question" and that "Zahedi does not assert that he did not realize Miramax, LLC was the successor to Miramax Film Corp." Dkt. 188 pg. 14:11-14. But that is not the standard. And even if it was, there is no evidence that Zahedi was aware that this new Miramax entity even existed until this lawsuit and it was *Miramax's* burden, not Zahedi's, to prove that its "express repudiation" included notice that it was the successor. Indeed, in *Seven Arts*, the court found that "Seven Arts cannot claim ignorance about Paramount's interest in, and distribution of, the pictures during the statutory period" because its "CEO and counsel [] personally signed and negotiated those contracts and agreements with Paramount." *Seven Arts Filmed Entertainment Ltd.*,733 F.3d at 1257. Here, there is no overlap in ownership or anything else between Film Corp. and Miramax, LLC and there was no notice to Zahedi of the "series of transactions" that took place between the time Film Corp. obtained the Zahedi License and Miramax supposedly claimed ownership of Zahedi's photograph. Miramax cannot prove otherwise and proffered no evidence that Zahedi was apprised of the series of transactions through which it obtained ownership of certain Film Corp. assets. As such, Zahedi was entirely ignorant of those transactions and did not have the "close relationship" required.

What sets this case apart from those relied upon by the Court involving a "close relationship" by contract, is that in those cases the plaintiff acknowledged in its own pleading that the defendant(s) had at one point been granted the rights complained of. *See White*, 2017 WL 4685542 at *1 ("Plaintiffs further allege that, in 1993, they entered into a business agreement with Defendants where they turned over the masters for 'Ain't No Fun'") and *Seven Arts Filmed Entertainment Ltd.,* 733 F.3d at 1253 ("Seven Arts's predecessor-in-interest had assigned all its rights to *Rules of*

*Engagement* to Paramount's predecessor-in-interest; a 1999 agreement in which Seven Arts had assigned away its rights to *An American Rhapsody;* and a 2000 agreement concerning *Who Is Cletis Tout?*.") Here, Zahedi never entered into a contract with Miramax and had no relationship at all with Miramax. The facts support only the conclusion that Film Corp. received the limited license to use the Zahedi Photograph in promotion of the film, and never had the ability to use it on merchandise or via license. Under that framework, any actions by Miramax cannot be assumed to put Zahedi on notice a repudiation, because Miramax's conduct was not affirming any right Zahedi had ever granted to either Film Corp. or Miramax, unlike the conduct of the defendants in the cases cited.

The 1994 license between Zahedi Photograph and Film Corp. did not create the type of relationship that would make Zahedi aware of Miramax's later purchase of some Film Corp. assets or give Zahedi any direct notice of Miramax's claim of ownership of his work. That is borne out here – it was a third party's toy that supposedly gave Zahedi notice of Miramax's ownership claim, not any notice that was given by Miramax to Zahedi per its "close relationship."

Zahedi and Miramax's relationship is entirely distinct from the relationships in *Seven Arts* and *White,* where the Courts held the plaintiffs could not claim ignorance about the defendant's interest in, and distribution of, the works at issue during the statutory period. *Seven Arts Filmed Entertainment Ltd.,* 733 F.3d at 1257; *White,* 2017 WL 4685542 at *3. Here, as explained in detail above, there was no relationship at all, and the third-party Toy was insufficient to provide notice to Zahedi that Miramax claimed ownership of the Zahedi Photograph. Zahedi's relationship with Miramax was such that Zahedi's acquisition of the Toy would put him *only* on notice of a possible infringement by Miramax, *not* a claim of ownership, which is distinct from the cases cited by Defendant and the Court, where the defendant's repudiation

PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFICATION

affirmatively asserted their ownership in the work. The Court's finding of a "close-relationship" is clear error.

### 3.   The Court did not consider certain arguments and evidence

This Court did not consider at all Zahedi's judicial admission argument in its analysis of the admissibility of Miramax's untimely submitted chain of title evidence. *See* Dkt. 177, 177-3. The Court also found that Zahedi did not specifically request Miramax's chain-of-title or ownership documentation, but that is incorrect. See Dkt. 177 pg. 6:9-19 (Zahedi sought "All DOCUMENTs which purportedly constitute, show or reflect ownership of the SUBJECT PHOTOGRAPHY or ACCUSED IMAGES." (RPD No. 20.)), citing Dkt. 177-14. Despite the fact that Miramax claimed in its answer and counterclaim and motion that it authored the photograph (in which case no transfer documents would exist), Zahedi still demanded same and they were not produced. Miramax's chain-of-title evidence should have been excluded for all purposes, which would have further precluded it from claiming ownership in the repudiation context.

### 4.   Miramax was unable to "change its position" on copyright ownership and Film Corp. never did so

The Order, in finding proper repudiation, states that Miramax "changed its position on its copyright claim over the decades[,]" but that statement is both provably false and in any event of no moment. Dkt. 188 pg. 17:8. Miramax's predecessor Film Corp. *never* changed its position as to ownership and authorship. It consistently held on the *Pulp Fiction* book,[4] on the Key Art Award, and in completing its registration application for the derivative poster ("Poster"), that Zahedi authored and owns the copyright for the Zahedi Photograph. See Dkt. 162-13, 171-1,

---

[4] Comparing the *Pulp Fiction* book's copyright notice with that of the Toy makes clear that the specific language on the book, which identifies Zahedi as the photograph's author, controls over the general language included on the Toy's packaging. See **Exhibit 2**.

171-2.  Indeed, there is no evidence in the record that Film Corp. *ever* identified itself or any party other than Zahedi as the author and owner of the Zahedi Photograph.

Miramax, whose only relationship to Film. Corp. is that it currently owns after a "series of transaction" certain assets of Film Corp., has now, decades after Film Corp.'s confirmation of Zahedi's ownership, taken a different position from Film Corp. It simply cannot do so.

Moreover, Miramax's claim of ownership is precluded by Film Corp.'s clear statements in 1994 that *Zahedi* owned the copyright. If any party disagreed with Film. Corp.'s ownership statement, they were required to file a suit no later than 1997 to challenge that designation. *Seven Arts Filmed Ent. Ltd.,* 733 F.3d at 1258 (because "[Film Corp.] clearly and expressly repudiated [its own] ownership of the copyrights more than three years before [Miramax] brought suit," the clam fails). This never happened. Miramax cannot evade the statute of limitations for ownership claims by making a *false and untimely* statement of ownership 18 years later via a third-party toy. Indeed, no court has ever found, as the Court found here, that a party repudiated another's ownership after it "changed its position."

### 5.     Ownership is necessary to repudiate, and the Court erroneously addressed repudiation before establishing ownership

It is axiomatic that a party cannot repudiate ownership without a colorable ownership interest. See, e.g., *Zuill*, 80 F.3d at (undisputed that defendant authored work and claimed to be the "sole owner" in earlier agreement between parties); *Seven Arts Filmed Ent. Ltd.*, 733 F.3d at 1256 (defendant owned registrations for works at issue). Indeed, this case would stand for the first time that a defendant repudiated an author's ownership when its own claim to ownership was barred as a matter of law.

Here, in a departure from all previous cases, the Court reached no conclusion as to, and did not even address, whether the repudiator, Miramax, had any colorable rights on which to base its putative repudiation. As explained above, this is distinct

and distinguishable from the cases cited by the Court regarding repudiation by a party whose ownership was gained through contract, rather than as a co-owner or co-author, because in those cases the plaintiff acknowledged in their own pleadings that the defendant had been granted the rights complained of. *White,* 2017 WL 4685542 at *1; *Seven Arts Filmed Entertainment Ltd.,* 733 F.3d at 1253. Zahedi has never acknowledged that Miramax had the right to exploit the work through licensing and merchandise, and Miramax has failed to prove its claim that it could.

The Court here, before deciding which party owned the copyright, simply *assumed* Miramax owned the copyright interest and accepted Miramax's argument that it expressly advised Zahedi of such ownership back in 2015 via the third-party Toy. But Miramax does not own the copyright for the Zahedi Photograph – its ownership claim fails as a matter of law[5] – and as such could not have repudiated Zahedi's ownership. While it does have an ownership claim for the *Pulp Fiction* toys, characters, and Poster, its copyright notices could apply only to those assets, and not the Zahedi Photograph. Miramax could not have repudiated Zahedi's ownership.

## II.   CLARIFICATION OF THE OWNERSHIP ISSUE IS NECESSARY

The parties filed their cross-motions to resolve the Phase One issues of copyright ownership of the Zahedi Photograph, and whether the statute of limitations applied to claims against Miramax. Both parties moved for a finding on ownership and the Court declined to rule. The Court did not clearly state which party owned the copyright for the Zahedi Photograph, which was the focus of this bifurcated phase of discovery. See Dkt. No. 140. The Court excluded Miramax's chain-of-title documentation, which, as a matter of law, precludes its ownership claim, but did not

---

[5] While the Court did not rule on Miramax's ownership claim, it excluded its chain-of-title evidence, which is required to establish ownership. *Fletcher Studios, Inc. v. A.V.E.L.A., Inc.,* 654 F.3d 958, 965 (9th Cir. 2011)(ownership cannot be established without chain-of-title).

clearly state that Zahedi owned the copyright. For the Parties to determine how to move forward following the issuance of the Order, clarification of this Court's findings as to copyright ownership of the Zahedi Photograph is necessary.

A court can clarify an order for any reason. *Wahl v. Am. Sec. Ins. Co.*, No. C-08-0555, 2010 WL 2867130, at *9 (N.D. Cal. July 20, 2010). Such a reason can be guiding the parties by addressing a source of ambiguity or confusion. *See Padgett v. Loventhal*, No. 5:04-CV-03946, 2015 WL 13753300, at *1 (N.D. Cal. May 13, 2015). Similarly, clarification is also warranted to address an "omission whenever one is found in a judgment, order, or other part of the record." *See* Fed. R. Civ. P. 60(a). Zahedi respectfully requests this court clarify its Order with respect to ownership of the copyright in the Zahedi Photograph. *See Ass'n of California Water Agencies Joint Powers Ins. Auth. v. Ins. Co. of the State of Pennsylvania*, No. CV-1101124, 2013 WL 12131734, at *3 (C.D. Cal. Oct. 9, 2013) (granting motion for clarification to render "specific rulings on issues [] identified" in a prior order). That clarification also necessarily determines the judgment to be entered.

Miramax and Zahedi both moved the Court for a finding as to which party owned the copyright for the Zahedi Photograph. Dkt. 145, 146. However, the Court did not rule on the issue of ownership due to its adoption of the statute of limitations defense. This case is distinct compared to the other cases where the statute of limitations was upheld and relied upon by the Court in the sense that it involves two parties claiming ownership due to a contract, rather than co-owner and co-authorship, and has reached the summary judgment stage of litigation where evidence of ownership has been presented before the Court.[6] Because of this unique posture  the

---

[6] *Zuill,* 80 F.3d 1366, 1369 (co-ownership claim); *Brownstein v. Lindsay,* 742 F.3d 55, 69 (3rd Cir. 2014) (co-authorship claim); *Everly v. Everly*, 958 F.3d 442, 453 (6th Cir. 2020) (co-authorship claim); *Gaiman v. McFarlane*, 360 F.3d 644, 654 (7th Cir. 2004) (co-ownership claim); Santa-Rosa, 471 F.3d at 228 (co-ownership claim);

Court has clear and undisputed evidence in contradiction of Miramax's ownership claim but did not reach a conclusion on that issue.

There appear to be only two outcomes in this case, either Zahedi is the owner of the copyright in the Zahedi Photograph, or Miramax Film Corp. acquired ownership of the copyright through a signed contract and then transferred it through a series of transactions to Miramax, LLC. It is respectfully submitted that the Court should find that Zahedi owns the copyright and may pursue his claims as to all other infringers, at the very least.

The Order's clearest reading is that Zahedi owns the copyright and Miramax does not, because to hold otherwise, would result in a party presenting valid undisputed evidence of copyright ownership[7], but then have this ownership be transferred to a third party whose has not supported its own claim of ownership simply because of the statute of limitation. A holding which no court has made before.

All relevant caselaw ensures that Zahedi maintains his ownership because "copyright ownership may not be transferred by any governmental body or other

_Seven Arts Filmed Entertainment Ltd.,_ 733 F.3d at 1257 (contractual claim resolved at pleading stage); _White,_ 2017 WL 4685542 at *3 (contractual claim resolved at pleading stage).

[7] The Court drew the following undisputed factual conclusions regarding the issue of ownership. In 1994, Zahedi took several photographs of Uma Thurman in character in her now-famous role as Mia Wallace in the Quentin Tarantino film Pulp Fiction. Dkt. 188, pg. 1:3-5. Film Corp. used the Zahedi Photograph with some changes on its poster for the film (the "Poster"). Dkt. 188, pg. 1:5-8. Neither party has produced a signed agreement identifying what rights either party retained in the photograph. Dkt. 188, pg. 1:12-14. Film Corp obtained a copyright registration for the Poster as a "key art transparency" from the Register of Copyrights in 2003. Dkt. 188, pg. 1:13-15. On Film Corp.'s copyright registration, Film Corp. checked the box to register a "2 dimensional artwork," not a photograph, and does not identify Zahedi as a contributor. Dkt. 188, pg. 1:15-17. Zahedi obtained a copyright registration for his photograph in 2019. Dkt. 188, pg. 1:18.

official." *McMunigal v. Bloch,* No. C 10-02765 SI, 2010 WL 5388218, at *6 (N.D. Cal. Dec. 23, 2010)(internal citations omitted), citing 17 U.S.C. 201(e), Cf. *Advance Magazine Publishers, Inc. v. Leach,* 466 F.Supp.2d 628, 638 (D.Md.2006) ("Defendant's claim to have effected the transfer [of copyright] by operation of law through adverse possession amounts to a claim for an involuntary transfer of rights, which is barred by 17 U.S.C. § 201(e)."). Here, given no signed writing as required by 17 U.S.C. § 204, the only way Miramax could hold rights would be via adverse possession, which is wholly improper.

The theory of ownership presented by Miramax is that Film Corp. obtained ownership in the copyright of the Zahedi Photograph through a work for hire agreement. However, as the Court notes, it is undisputed "[n]either party has produced a signed agreement" identifying either party's rights in the Zahedi Photograph. Dkt. 188, pg. 1:12-14. Miramax's ownership theory ends there. "[T]he Copyright Act states in no uncertain terms that a "work made for hire" is one where the parties "expressly agree in **a written instrument signed by them** that the work shall be considered a work made for hire." *Cunningham v. Seymour*, No. CV1108095DMGAJWX, 2012 WL 12894699, at *3 (C.D. Cal. 2012)(emphasis added by the court). If there is no writing, then a work cannot be a commissioned or specially ordered "work for hire." *Jules Jordan Video, Inv. v. 144942 Canada, Inc.,* 617 F.3d 1146, 1155 (9th Cir. 2010*)*; see also 17 U.S.C. § 101 (parties must "expressly agree" in signed writing). Without the presence of a signed written agreement, Miramax cannot prove that Zahedi was ever divested of his ownership in the copyright for the Zahedi Photograph. Thus, Miramax's ownership claim is barred as a matter of law and Zahedi should be adjudged the copyright owner.

This clarification is necessary to establish Zahedi's substantive rights with respect to the remaining defendants in the case. Specifically, Defendant Target Corporation ("Target") has filed a Motion for Summary Judgment (Dkt. 158) which

contends, among other things, that Zahedi's claims are barred by the statute of limitations. But there is no evidence that Zahedi discovered Target's infringement outside of the statute of limitations. Further, Miramax has not and cannot prove its own affirmative ownership claim due to the Court's ruling on its chain of title evidence and the other bases set forth above. Therefore, any license from Miramax to Target is invalid, and Zahedi's claims remain valid as to Target and all other third parties. *Gardner v. Nike, Inc.* 279 F, 774, 778 (9th Cir. 2002) (sublicenses are invalid without consent of licensor and copyright owner). Whether or not Zahedi is a copyright holder in the Zahedi Photograph is central to this determination. No case stands for the proposition that repudiation by a single party shall extend to all other parties exploiting a work through license. Zahedi respectfully requests the Court clarify the Order to state that Zahedi owns the copyright for the Zahedi Photograph.

## III.   CONCLUSION

It is respectfully submitted that the Court erred in finding that Miramax repudiated Zahedi's ownership of the Zahedi Photograph's copyright. Miramax did not own that copyright and thus could not have repudiated Zahedi's ownership. And Miramax and Zahedi were not in a close relationship. And the single Toy's packaging, which did *not* have a plain and express notice or statement that Miramax claimed ownership of the Zahedi Photograph, was not conveyed by Miramax to Zahedi, did *not* display the Zahedi Photograph alone, and was not accompanied by credit or royalties when *none* were expected does not meet the repudiation standard.

The facts and law do not support this outcome and it creates manifest injustice. The Order represents the first time that a court has found repudiation based on a "change in position" vis-à-vis a work's ownership and the first time that a court has found repudiation by a party whose own ownership claim to the work is barred as a matter of law.

1   Miramax is barred from claiming ownership as a matter of law due to lack of

2   chain of title, incomplete chain of title, lack of written transfer, and the statute of

3   limitations, which ran three years after the 1994 *Pulp Fiction* book was released. Yet

4   Miramax here is attempting to somehow recapture ownership rights in a manner akin

5   to adverse possession, which is wholly improper and violative of 17 U.S.C. § 204. It

6   is respectfully requested that the Court reconsider and clarify its Order to establish

7   that Zahedi owns the copyright for the Zahedi Photograph and may pursue his claims

8   as to all Defendants, or, in the alternative, all Defendants aside from Miramax.

9   Without clarification, it will remain unclear as to which party owns the Zahedi

10  Photograph's copyright even though all evidence establishes Zahedi's ownership.

12                                      Respectfully submitted,

14  Dated: December 8, 2021        By:    */s/ Scott Alan Burroughs*
15                                        Scott Alan Burroughs, Esq.
                                          Trevor W. Barrett, Esq.
16                                        Frank R. Trechsel, Esq.
17                                        DONIGER / BURROUGHS
                                          *Attorneys for Plaintiff*